Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

## DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), and 554 (I) AUTHORIZING THE DEBTORS TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING PROCEDURES TO SELL CERTAIN MISCELLANEOUS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) APPROVING PROCEDURES FOR THE DEBTORS TO RETAIN A BROKER OR LIQUIDATOR; (IV) APPROVING PROCEDURES TO ABANDON AND DISPOSE OF ESTATE ASSETS THAT ARE BURDENSOME OR OF INCONSEQUENTIAL VALUE; AND (V) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, Texas 76113.

**AN EXPEDITED HEARING HAS BEEN REQUESTED ON THIS MATTER. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT PRIOR TO THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THIS MOTION; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Corsicana Bedding, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Debtors") hereby file this *Debtors' Expedited Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and 554 (I) Authorizing the Debtors to Sell Certain Miscellaneous Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving Procedures to Sell Certain Miscellaneous Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (III) Approving Procedures for the Debtors to Retain a Broker or Liquidator; (IV) Approving Procedures to Abandon and Dispose of Estate Assets that are Burdensome or of Inconsequential Value; and (V) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1. The United States District Court for the Northern District of Texas (the "District Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On June 25, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      On July 8, 2022, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases. No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Michael Juniper in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "Juniper Declaration").[2]

**A.      The Debtors Have Identified De Minimis Miscellaneous Assets that are Not Necessary for Continued Operations and Should be Sold to Avoid Unnecessary Costs**

5.      The Debtors' business operations involve manufacturing mattresses and foundations across a full range of products featuring the latest in sleep technology. The Debtors are headquartered in Texas, but operate out of offices and manufacturing plants across the United States.

6.      As set forth in the Juniper Declaration, the Debtors, in consultation with their advisors, elected to commence these Chapter 11 Cases to effectuate a transaction with Blue Torch Finance LLC ("Blue Torch"), or such other party that may emerge through the section 363 sale

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Juniper Declaration.

process. In furtherance of the proposed sale, on June 29, 2022, the Debtors filed the *Debtors'*
*Motion, Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004,*
*and 6005, for Entry of an Order (A) Approving Sale and Bidding Procedures and Limited Bid*
*Protections in Connection with Sale of Assets of the Debtors, (B) Authorizing the Sale of Assets*
*Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting*
*Related Relief* [Docket No. 68] (the "Sale Motion").

7.      Through the Sale Motion, the Debtors seek to sell substantially all of their assets
that are required or beneficial to the Debtors' ongoing business operations. The relief sought in
this Motion is limited to the disposition of assets at business locations that the Debtors are closing
or are otherwise unnecessary for ongoing operations.

8.      Through this Motion, the Debtors seek (i) authority to sell certain *de minimis*
miscellaneous assets that are no longer necessary for continued operations and must be removed
from leased locations in the immediate future, (ii) approval of procedures to sell certain other *de*
*minimis* miscellaneous equipment that may need to be sold in the future, (iii) approval of
procedures to retain a broker or liquidator for the *de minimis* sales described in this Motion; and
(iv) approval of procedures to abandon and dispose of miscellaneous estate assets that are
burdensome or of inconsequential value.

9.      In their sound business judgment, the Debtors have determined that certain business
locations are no longer necessary for the continued operation of their business. For this reason, on
the Petition Date, the Debtors filed the *Debtors' First Omnibus Motion to Reject Certain Executory*
*Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy*
*Rule 3006 as of the Petition Date* [Docket No. 16] (the "First Omnibus Rejection Motion"). In the
First Omnibus Rejection Motion, the Debtors seek to reject, among other things, leases for a

manufacturing plant in Indiana and an office space in North Carolina. The Debtors also intend to seek rejection of one or more additional lease locations in the near future. The First Omnibus Rejection Motion is set for hearing on July 27, 2022.

10.     To minimize the risk of unnecessary administrative expenses, the Debtors intend to completely vacate the Indiana and North Carolina leased premises prior to August 1, 2022. The sale or removal of all personal property and equipment is critical to those efforts. To preserve the value of their estates, the Debtors have identified various items of equipment and personal property that add value to the Debtors' operations, and intend to re-deploy such equipment in the Debtors' other locations. However, in the sound exercise of their business judgment, the Debtors have also identified various items of equipment and personal property that are no longer necessary for the continued operation of their business and should be sold. A true and correct list of such property and equipment is attached to the proposed order as **Exhibit 1** (collectively, the "Miscellaneous Equipment"). The Miscellaneous Equipment includes variety of tools, machines, equipment, and other items, including spring uncompressors, wire machines, foundation stretchers, industrial saws, quilters, and sewing machines, among other assets.

11.     The Debtors estimate that the aggregate value of the Miscellaneous Equipment is less than $1 million. Due to the relatively low value of the Miscellaneous Equipment, the Debtors believe that conducting auctions and conducting hearings for each proposed sale transaction would result in costs that are disproportionate to the anticipated sale proceeds. Likewise, the Debtors believe that removing and storing such Miscellaneous Equipment would exceed the amount of any corresponding benefit to the Debtors' estates.

12.     The market for such Miscellaneous Equipment is relatively limited. The Debtors have received offers for the purchase of certain Miscellaneous Equipment from multiple third-

party potential buyers. Due to the urgent need for the Debtors to obtain immediate approval of the sale of the Miscellaneous Equipment, the short time window to effectuate the sales, and to provide as much advance notice as possible to parties in interest, the Debtors filed this Motion on the date hereof prior to finalizing the terms of the sales of the Miscellaneous Equipment. The Debtors intend to file supplementary information regarding the terms of proposed sales of the Miscellaneous Equipment, including the identity of potential buyers and the purchase price of the applicable Miscellaneous Equipment when such information becomes available prior to the hearing on this Motion.

**B.      The Debtors Anticipate Identifying Additional De Minimis, Unnecessary Equipment for Sale**

13.      The Debtors anticipate that additional de minimis assets that are no longer beneficial for the Debtors' operations may need to be sold in connection with the anticipated rejection of additional leases (such assets, the "Additional Miscellaneous Equipment" and together with the Miscellaneous Equipment, the "Miscellaneous Assets").

14.      Given the unnecessary administrative costs that would be incurred absent the sale of Miscellaneous Assets and the de minimis nature of such equipment, the Debtors submit that it is necessary and appropriate to approve the sale of the Miscellaneous Equipment immediately (subject to supplemental evidence being presented in support of such sale), and to develop prompt and cost-efficient procedures to facilitate the sale of any Additional Miscellaneous Equipment.

**C.      Potential Retention of Broker or Liquidator**

15.      The Debtors currently anticipate facilitating sales of the Miscellaneous Assets through the efforts of their employees. Nonetheless, certain of such assets may be more efficiently sold through a broker or liquidator. Although the Debtors have not engaged a broker or liquidator for such services, the Debtors request Court authority to enter into such agreement in the sound

exercise of their business judgment, subject to the terms of the proposed order attached to this Motion.

### D. Abandonment of Certain Assets

16. In contrast to the Miscellaneous Assets that the Debtors intend to sell, the Debtors also anticipate identifying certain identified items that are worthless, or of inconsequential value, and should be abandoned.

17. Through this Motion, the Debtors do not request authority to abandon any specific assets. Rather, the Debtors expect that as these Chapter 11 Cases proceed, the Debtors will identify assets that should be abandoned in order to eliminate unnecessary storage and expense costs. The determination to abandon and dispose of an asset will be made only after the Debtors have exhausted reasonable efforts to sell such assets. Thus, the Debtors seek approval of abandonment procedures to deal with such issues as they arise. With respect to such burdensome assets with a book value, or if no value is available, an estimated value, of less than $50,000, the Debtors propose to scrap such property in order to alleviate the burdens upon the estate associated therewith.

### **Relief Requested**

18. The Debtors request the entry of an order, substantially in the form attached to the Motion as **Exhibit A** (the "Proposed Order") (i) authorizing the Debtors to immediately sell the Miscellaneous Equipment free and clear of liens, claims, encumbrances, and interests; (ii) approving procedures to sell Additional Miscellaneous Equipment free and clear of liens, claims, encumbrances, and interests; (iii) authorizing procedures for the Debtors to retain a broker or liquidator; (iv) approving procedures to abandon and dispose of estate assets that are burdensome or of inconsequential value; and (v) granting related relief.

## A. The Immediate Sale of the Miscellaneous Equipment is Appropriate Under the Circumstances

19.     The immediate sale of the Miscellaneous Equipment is an appropriate exercise of the Debtors' sound business judgment. Bankruptcy Code § 363(b)(1) provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See, e.g.*, *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

20.     To determine whether a proposed sale is supported by a debtor's sound business judgment, courts have considered various factors, including whether fair and reasonable consideration is provided and whether the transaction has been proposed and negotiated in good faith. *See generally In re Condere*, 228 B.R. 615, 626 (S.D. Miss. 1998).

21.     When a sound business justification exists for the sale transaction (as in this case), the Court may, pursuant to Bankruptcy Code section 363(f), authorize the sale of the assets that are the subject of the transaction free and clear of existing liens, claims, encumbrances, and interests if:  (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interests; (2) any entity a holding lien, claim, encumbrance or interest consents to the proposed sale; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity will be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.  11 U.S.C. § 363(f).

22.     Here, the Debtors have a sound business justification for selling the Miscellaneous Equipment. The Miscellaneous Equipment consists of *de minimis* equipment and machinery that is currently located at leased premises the Debtors intend to vacate in the near term, including certain Miscellaneous Equipment that must be removed from the applicable leased premises prior to August 1, 2022. The Miscellaneous Equipment listed on **Exhibit 1** of the Proposed Order is limited to assets that are no longer necessary for the Debtors' operations. The cost to the Debtors or removing and storing such equipment exceeds any benefit to the Debtors' estates. The value of the Miscellaneous Equipment is de minimis relative to the value of the Debtors' remaining assets.

23.     Authorizing the Debtors to sell the Miscellaneous Equipment to buyers selected by the Debtors provides the most efficient and cost-effective means of maximizing the value of the Miscellaneous Equipment and is thus in the best interests of the Debtors' estates. At or prior to the hearing on this Motion, the Debtors intend to submit additional evidence regarding the fair and reasonable consideration to be provided and the good faith negotiations between the Debtors and the prospective buyers. The Debtors intend to submit evidence that of the reasonable steps undertaken to obtain the best price for the Miscellaneous Equipment. For example, the Debtors have solicited offers from likely, potential purchasers with interest in the assets to be sold. None of the proposed purchasers will include affiliates, employees, or insiders of any of the Debtors.

24.     Furthermore, section 363(f) of the Bankruptcy Code is satisfied if the entity holding a lien, claim, encumbrance, or interest consents to the sale. If no parties object (or any objection is resolved), section 363(f)(2) is satisfied and the sale may be free and clear of all such interests. The valid prepetition liens or security interests will attach to the sale proceeds. Accordingly, the Debtors submit that the sale of the Miscellaneous Equipment free and clear of all liens, claims, and interests is warranted under the circumstances.

**B.     Procedures Regarding the Sale of Additional Miscellaneous Equipment Should be Approved**

25.     The Debtors anticipate that Additional Miscellaneous Equipment that is no longer beneficial for the Debtors' operations will need to be sold in connection with the anticipated rejection of additional leases.

26.     To strike a balance between the desire to maximize the value of the Miscellaneous Additional Equipment to the Debtors' estates (and minimize administrative expenses with respect thereto) and the necessity of providing parties in interest with notice and an opportunity to object to transactions that may be out of the ordinary course of business, the Debtors propose the following procedures for the sale of Miscellaneous Additional Equipment (the "Sale Notice Procedures"):

a.     The Debtors will give written notice, by electronic or overnight mail, of each such proposed sale of Miscellaneous Additional Equipment (the "De Minimis Sale Notice") to (i) the Office of the United States Trustee, (ii) counsel for the Committee, (iii) counsel for the Stalking Horse Bidder and DIP Term Administrative Agent, Adam C. Harris and Abbey Walsh, Schulte Roth & Zabel LLC, 919 Third Avenue, New York, NY 10022, adam.harris@srz.com and abbey.walsh@srz.com; (iv) counsel for the DIP Revolver Administrative Agent, Brian Swett and Shawn Fox, McGuireWoods LLP, 1251 Avenue of the Americas 20th Floor, New York, NY 10020-1104, bswett@mcguirewoods.com and sfox@mcguirewoods.com; (v) any known holder of a lien, claim, encumbrance or interest against the specific Miscellaneous Assets to be sold, and (v) any party that has requested special notice (collectively, the "Notice Parties").

b.     The De Minimis Sale Notice will specify (i) the asset or assets to be sold and the selling Debtor thereof, (ii) the identity of the proposed purchaser, (iii) the value as reflected on the Debtors' books, or if no value is available, an estimated value, (iv) the proposed sale price, and (v) and will have attached a copy of any of the sale agreements (to the extent such agreements are reasonably available).

c.     Any objection to the proposed sale or transfer of Miscellaneous Additional Equipment must (i) be in writing; (ii) state with specificity the nature of the objection; (ii) be served on counsel for the Debtors: Haynes and Boone, LLP, 301 Commerce Street, Suite 2600 Fort Worth, TX 76102 (Attn:

Stephen Pezanosky, stephen.pezanosky@haynesboone.com; Ian Peck, Ian.Peck@haynesboone.com; and David Staab, David.Staab@haynesboone.com), so as to be received by the Debtors within **seven (7) calendar days** after the date the Debtors send the De Minimis Sale Notice (the "De Minimis Sale Objection Period").

d.     If no objections are received by the Debtors prior to the expiration of the De Minimis Sale Objection Period, or any such objections are resolved, then counsel for the Debtors will submit to the Court a form of order, which contains (among other things) findings that (i) the Sale Notice Procedures have been satisfied, (ii) no objection to the De Minimis Sale Notice was timely made or such objection has been resolved, (iii) the Debtors may proceed with the proposed sale free and clear of all security interests, liens, claims, encumbrances, and interests, and (iv) the sales or transfers of the Miscellaneous Additional Equipment shall be deemed arm's length transactions conducted in good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.

e.     If the Debtors receive a written objection prior to the expiration of the De Minimis Sale Objection Period, and the Debtors are unable to resolve such objection, the Debtors will not take any additional steps to consummate the sale of the particular asset which is the subject of the objection (but may proceed to sell any other Miscellaneous Additional Equipment set forth in the De Minimis Sale Notice to which no objection was timely served in accordance herewith) without first obtaining the Court's approval for the sale of that specific asset with respect to which an objection was timely served.

f.     Upon Court approval of the order authorizing the Miscellaneous Additional Equipment sale, the Debtors may consummate the proposed sale transaction and take such actions as are necessary to close the sale and obtain the sale proceeds without further notice or Court order.

27.     The Debtors submit that the Sale Notice Procedures will provide the necessary information for the recipients thereof to ascertain whether the Debtors have met the foregoing requirements with respect to the Miscellaneous Additional Equipment set forth in the De Minimis Sale Notice. If no objection to a De Minimis Sale Notice is timely served, the Notice Parties will have indicated by their conduct that the Debtors have satisfied the relevant criteria, and the sale should proceed.

28. The proposed Sale Notice Procedures will satisfy the notice policies set forth in: (a) Bankruptcy Rule 2002(c)(1), which requires a sale notice to set forth the terms and conditions of private sales and the time fixed for filing objections; (b) Bankruptcy Rule 2002(i), which requires service of sale notices upon the Committees or their authorized agents (i.e., their counsel); (c) Bankruptcy Rule 2002(k) which requires service of sale notices upon the United States Trustee; and (d) Bankruptcy Rule 6004 which requires service of sales notices "free and clear" of interests upon parties who have liens or other interests in the property to be sold.

29. As set forth above, the Debtors will have a sound business justification for selling any Miscellaneous Additional Equipment and for establishing the Sale Notice Procedures to permit the Debtors to accomplish such future sales in the most efficient manner possible. Allowing the Debtors to sell unnecessary, miscellaneous assets pursuant to the Sale Notice Procedures proposed herein provides the most efficient and cost-effective means of maximizing the value of the Miscellaneous Additional Equipment and thus is in the best interests of the Debtors' estates. Requiring the Debtors to file a motion and hold a hearing for each such sale transaction would result in administrative expenses for drafting, serving, and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings. The Debtors believe that the proceeds that will be generated by many of the sale transactions for any Miscellaneous Additional Equipment do not warrant incurring such expenses. Nonetheless, the Sale Notice Procedures preserve the right of the Notice Parties to object if they deem it appropriate to do so.

30. Additionally, the notice procedures set forth herein satisfy the requirements of section 363(f). A sale free and clear of all claims and interests is necessary to maximize the value of the Miscellaneous Additional Equipment. A sale subject to claims and interests would result in a lower purchase price and be of substantially less benefit to the Debtor's estate. A sale free and

clear of liens is particularly appropriate under the circumstances because any lien in, to or against the Miscellaneous Additional Equipment that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party in interest. The Debtors submit that holders of liens will be adequately protected by the availability of the proceeds of the sale to satisfy their liens. Thus, a proposed sale satisfies Bankruptcy Code § 363(f). Moreover, any holder of a claim or interest that receives the De Minimis Sale Notice and which fails to object to the sales of the applicable Miscellaneous Additional Equipment free and clear of claims and interests should be deemed to consent to the sale, thereby complying with Bankruptcy Code § 363(f)(2).

### C.   Purchasers of Miscellaneous Assets Should be Afforded the Protections of Section 363(m) of the Bankruptcy Code as Good Faith Purchasers

31.     The Debtors submit that buyers of the Miscellaneous Assets should be entitled to the protections afforded by section 363(m) of the Bankruptcy Code, which provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

32.     While the Bankruptcy Code does not define "good faith," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990)

4894-5871-6200

(holding that a party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders").

33. The Debtors submit that the selection of a purchaser of Miscellaneous Assets and any sale or transfer of Miscellaneous Assets will be the product of arm's length, good faith negotiations. Accordingly, the Debtors request that the Court make a finding in the proposed order that the purchasers of the Miscellaneous Assets have purchased such assets in good faith and are entitled to the full protections of section 363(m) of the Bankruptcy Code.

**D.     Procedures for Retention of Broker or Liquidator to Facilitate the Miscellaneous Asset Sales**

34. Although the Debtors currently anticipate facilitating sales of the Miscellaneous Assets through the efforts of their employees, it is possible that the Debtors may require the services of a broker or liquidator to effectuate the sales of certain Miscellaneous Assets. The Debtors believe that a decision to employ a broker or liquidator to facilitate de minimis sales of assets is arguably appropriate under Bankruptcy Code § 363(c)(1) because the employment and compensation of a broker or liquidator in such limited capacity are matters that relate to the ordinary course of the Debtors' business, given that the debtors have, from time to time, replaced or sold unneeded equipment. Alternatively, section 327(a) of the Bankruptcy Code provides that, subject to court approval, a debtor may employ one or more appraisers, auctioneers, or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist a debtor-in-possession in carrying out the debtor's duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

35. Given the limited value of the Miscellaneous Assets and the potentially time sensitive nature of a broker or liquidator's engagement, it could hinder the administration of the Debtors' estates if the Debtors were required (a) to submit to the Court an application, declaration,

4894-5871-6200

and proposed retention order for the liquidator or broker, (b) to wait until such order is approved before such liquidator or broker continues to render services, and (c) to withhold payment of the normal fees and expenses of the liquidator or broker until they comply with the compensation and reimbursement procedures applicable to Chapter 11 professionals.

36.     Accordingly, the Debtors request that the Court authorize, but not direct, the Debtors to employ and retain a broker or liquidator to facilitate sales of the Miscellaneous Assets without the need to file an individual retention application or obtain a retention order. The Debtors propose that in the event the Debtors seek to retain a broker or liquidator to facilitate the sale of Miscellaneous Assets, the Debtors shall:

a.      File with the Court and serve on the Notice Parties a notice (the "Retention Notice"), listing the same of the liquidator or broker, together with a brief description of the services to rendered and the proposed compensation structure.

b.      The Retention Notice shall include a declaration pursuant to section 1746 of title 28 of the United States Code by the proposed liquidator or broker providing that such liquidator or broker does not hold or represent an interest adverse to the estate and is a disinterested person.

c.      The Notice Parties shall have **7 calendar days** after the service of a Retention Notice to object to the retention of such liquidator or broker (the "Retention Objection Deadline"). Any such objections shall be filed with the Court and served upon the Debtors, the Debtors' counsel, the Notice Parties, and the liquidator or broker subject to such objection by the Objection Deadline. If any objection cannot be resolved or withdrawn within **seven (7) days after service** (or on such earlier date as determined by the Debtors in their discretion), upon motion by the Debtors, such objection shall be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the liquidator or broker, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, or if any submitted objection is timely withdrawn or resolved, the Debtors shall be authorized to retain the liquidator or broker as a final matter without further order of the Court, as of the applicable date of engagement.

      d.        In the event that the Debtors utilize the services of a liquidator or broker after the Petition Date, the Debtors shall pay such liquidator or broker 100% of the fees and 100% of the disbursements incurred with respect to postpetition services, upon the submission to, and subject to approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and expenses actually incurred; provided, however, that the broker or liquidator's total compensation and reimbursement shall not exceed a fee cap in the aggregate amount of **$75,000** (the "<u>Fee Cap</u>").

      e.        If liquidator or broker's fees and expenses exceed the Fee Cap, such liquidator or broker shall file a fee application on account of the excess amount over the applicable limit and apply for compensation and reimbursement of such amount in compliance with Bankruptcy Code §§ 330 and 331 and applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other procedures and orders of the Court. Such applicable liquidator or broker shall be entitled to interim payment of its requested fees and expenses up to the Fee Cap pending the Court's allowance of those requested fees and expenses in excess of the Fee Cap.

37.    Based on the foregoing facts and circumstances, the Debtors submit that the employment and compensation of a broker or liquidator to facilitate the sale of Miscellaneous Assets in the manner set forth above and in the Proposed Order is supported by sound business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

**E.**      **Procedures for Abandonment of Certain Property**

38.    Just as sufficient justification exists to establish streamlined and efficient procedures to sell Miscellaneous Assets, sufficient justification exists to establish procedures for the Debtors to abandon assets that are burdensome or of inconsequential value. Section 554(a) of the Bankruptcy Code provides that after notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a).

39.     The Debtors propose abandoning assets pursuant to the procedure outlined herein only after the Debtors have exhausted reasonable efforts to sell the assets.  After those efforts have failed, the Debtors propose to follow the following procedures to dispose of the burdensome assets (the "<u>Abandonment Procedures</u>"):

   a.   The Debtors will give written notice, by electronic mail or overnight mail, of each such proposed abandonment of assets (the "<u>Abandonment Notice</u>") to the Notice Parties.

   b.   The Abandonment Notice will specify (i) the asset or assets to be abandoned and the abandoning Debtor thereof, (ii) the value of the abandoned assets as reflected on the Debtors' books, or if no such value is available, an estimated value (which value in either case, will not exceed **$50,000**), (iii) the cost of removal and disposal of the assets to be abandoned, and (iv) the reasonable efforts made by the Debtors to locate a purchaser of such assets and the inability to locate any such purchaser.

   c.   If none of the Notice Parties serves the Debtors with a written objection to the proposed transaction in a manner so that it is actually received by the Debtors within **seven (7) calendar days** after the date the Debtors send the Abandonment Notice (the "<u>Abandonment Objection Deadline</u>") or any such objection is resolved, counsel for the Debtors will submit to the Court a form of order which contains (among other things) findings that (i) the Abandonment Notice Procedures have been satisfied, (ii) no objection to the proposed abandonment was timely made or such objection has been resolved, and (iii) the Debtors may take all reasonable and necessary steps to abandon and dispose of the assets described in the Abandonment Notice, and pay costs associated therewith.

   d.   Upon Court approval of the order authorizing the abandonment, the Debtors may take such actions as are necessary to abandon the assets and dispose of them without further notice or Court order.

   e.   If the Debtors receive a written objection prior to the expiration of the Abandonment Objection Deadline, and the Debtors are unable to resolve such objection, the Debtors will not take any additional steps to abandon the assets which are the subject of the objection (but may proceed to abandon any other assets set forth in the Abandonment Notice to which no objection was timely served in accordance herewith) without first obtaining the Court's approval for the abandonment of that specific asset with respect to which an objection was timely served.

4894-5871-6200

40.    The Debtors submit that the proposed Abandonment Procedures satisfy section 554 of the Bankruptcy Code.  The Abandonment Procedures provide parties with sufficient notice to protect the interests of the creditors. Just as with the sale procedures requested herein, streamlined and efficient procedures to abandon assets that are burdensome or of inconsequential value are necessary to minimize expenses associated with abandoning assets and preserving estate assets.

## F.    Modification of Notice Requirements

41.    If appropriate notice and an opportunity are given in light of the particular circumstances, then the notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances…."). Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one days' notice of proposed uses of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.

42.    However, upon a showing of cause, courts are authorized to shorten the 21-day notice period generally applicable to sales under section 363, or direct another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. *See* Fed. R. Bankr. P. 2002(i).

43.    Further, Bankruptcy Rule 9006(c) authorizes courts for cause shown reduce the time period for notices otherwise required under the Bankruptcy Rules. Fed. R. Bankr. P.

9006(c)(1). Additionally, with respect to the Abandonment Procedures, the Debtors seek to limit notice to the Notice Parties pursuant to Bankruptcy Rule 6007(a).

44. The Debtors submit that the proposed Sale Notice Procedures and Abandonment Procedures contain appropriate oversight and review by the Notice Parties to ensure that each contemplated transaction is in the best interest of the Debtors and their estates, while also providing the ability of Court review if an objection is timely filed. The Debtors, therefore, propose to streamline the notice process as described in this Motion.

## Request for Waiver of Stay

45. To the extent that the relief sought in the Motion constitutes a use of property under Bankruptcy Code § 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to avoid immediate and irreparable harm. Moreover, given the *de minimis* nature of the Miscellaneous Assets and the necessary speed by which such certain sales need to occur, the Debtors submit that a waiver of Bankruptcy Rules 6004(h) and 6003 is warranted under the circumstances and is in the best interests of the Debtors estates.

## Notice

46. Notice of this Motion will be provided to the parties listed on the Debtors' service list in accordance with the *Order Granting Complex Chapter 11 Bankruptcy Case Treatment*.

WHEREFORE, the Debtors respectfully request that the Court (i) grant the Motion and (ii) grant such other and further relief as is just and proper.

4894-5871-6200

RESPECTFULLY SUBMITTED this 12th day of July, 2022.

By: _/s/ David L. Staab_____
Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned proposed counsel for the Debtors hereby certifies that on or before July 12, 2022, proposed counsel for the Debtors conferred via phone or e-mail with counsel for the United States Trustee, counsel for the Committee, counsel for the Stalking Horse Bidder and DIP Term Administrative Agent, and counsel for the DIP Revolver Administrative Agent regarding the relief requested in the Motion. Such parties are engaged in ongoing review of the Motion, and the rights of all parties are reserved with respect to the relief requested in the Motion.

_/s/ David L. Staab_____
David L. Staab

<u>**EXHIBIT A**</u>

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**ORDER GRANTING DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), and 554 (I) AUTHORIZING THE
DEBTORS TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (II) APPROVING PROCEDURES TO SELL
CERTAIN MISCELLANEOUS ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (III) APPROVING PROCEDURES FOR THE
DEBTORS TO RETAIN A BROKER OR LIQUIDATOR; (IV) APPROVING
PROCEDURES TO ABANDON AND DISPOSE OF ESTATE ASSETS THAT ARE
BURDENSOME OR OF INCONSEQUENTIAL VALUE; AND (V) GRANTING
RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, Texas 76113.

Upon the *Debtors' Expedited Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and 554 (I) Authorizing the Debtors to Sell Certain Miscellaneous Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving Procedures to Sell Certain Miscellaneous Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (III) Approving Procedures for the Debtors to Retain a Broker or Liquidator; (IV) Approving Procedures to Abandon and Dispose of Estate Assets that are Burdensome or of Inconsequential Value; and (V) Granting Related Relief* (the "Motion"),[2] of Corsicana Bedding, LLC, *et al.* (collectively, the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, Miscellaneous Rule No. 33 (N.D. Tex. August 3, 1984); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections, if any, to the Motion have been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

**A.**     **Sale of the Miscellaneous Equipment Free and Clear**

2.     Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtors are authorized to take any and all actions necessary and appropriate to effectuate, implement, and close on the sale or transfer the property of the Debtors' estates listed in **Exhibit 1** of this Order (the "Miscellaneous Equipment") in any individual transaction or series of related transactions to a single buyer or group of related buyers without further notice or order or approval of the Court, in each case free and clear of all liens, claims, encumbrances, and interests (with all such liens, claims, encumbrances, and interests attaching to the proceeds of such sale(s) with the same validity, force, and effect that existed with respect to such Miscellaneous Equipment immediately before the consummation of such sale(s)); *provided, however*, that the Debtors shall be required to obtain supplemental approval from this Court if the aggregate amount of gross proceeds of Miscellaneous Equipment sales exceed **$1 million** (the "Approval Threshold"). Sales or transfers of the Miscellaneous Equipment shall be deemed arm's length transactions conducted in good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.

3.     Within **five business days** following the sale of any Miscellaneous Equipment, the Debtors shall file on the docket a notice of sale (the "Miscellaneous Equipment Sale Notice") and serve the Miscellaneous Equipment Sale Notice by electronic transmission, first class mail, or overnight mail upon: (i) the Office of the United States Trustee, (ii) counsel for the Committee, (iii) counsel for the Stalking Horse Bidder and DIP Term Administrative Agent, Adam C. Harris and Abbey Walsh, Schulte Roth & Zabel LLC, 919 Third Avenue, New York, NY 10022, adam.harris@srz.com and abbey.walsh@srz.com; (iv) counsel for the DIP Revolver Administrative Agent, Brian Swett and Shawn Fox, McGuireWoods LLP, 1251 Avenue of the Americas 20th Floor, New York, NY 10020-1104, bswett@mcguirewoods.com and

4894-5871-6200

sfox@mcguirewoods.com; (v) any known holder of a lien, claim, encumbrance or interest against the specific Miscellaneous Assets to be sold, and (v) any party that has requested special notice (collectively, the "Notice Parties"). The Miscellaneous Equipment Sale Notice shall include a description of the Miscellaneous Equipment sold, the cash price paid to the Debtors, the name and address of the purchaser, and a statement that the purchaser is not an insider or affiliate of the Debtor.

**B.      Procedures Regarding the Sale of Additional Miscellaneous Equipment**

4.      Pursuant to Bankruptcy Code sections 105(a) and 363(b), the following procedures regarding the sale of any Miscellaneous Additional Equipment (the "Sale Notice Procedures") are hereby authorized and approved:

a.      In the event that the Debtors seek to sell Miscellaneous Additional Equipment, the Debtors shall file on the docket and give written notice, by electronic or overnight mail, of each such proposed sale of Miscellaneous Additional Equipment (the "De Minimis Sale Notice") to the Notice Parties.

b.      The De Minimis Sale Notice shall specify (i) the asset or assets to be sold and the selling Debtor thereof, (ii) the identity of the proposed purchaser, (iii) the value as reflected on the Debtors' books, or if no value is available, an estimated value, (iv) the proposed sale price,[3] and (v) and will have attached a copy of any of the sale agreements (to the extent such agreements are reasonably available).

c.      Any objection to the proposed sale or transfer of Miscellaneous Additional Equipment must (i) be in writing; (ii) state with specificity the nature of the objection; (ii) be served on counsel for the Debtors: Haynes and Boone, LLP, 301 Commerce Street, Suite 2600 Fort Worth, TX 76102 (Attn: Stephen Pezanosky, stephen.pezanosky@haynesboone.com; Ian Peck, Ian.Peck@haynesboone.com; and David Staab, David.Staab@haynesboone.com), so as to be received by the Debtors within **seven (7) calendar days** after the date the Debtors send the De Minimis Sale Notice (the "De Minimis Sale Objection Period").

---

[3] Sales of Miscellaneous Additional Equipment shall also be subject to the Approval Threshold, such that the Debtors shall seek additional approval from this Court prior to effectuating aggregate sales of Miscellaneous Assets in excess of the Approval Threshold.

d. If no objections are received by the Debtors prior to the expiration of the De Minimis Sale Objection Period, or any such objections are resolved, then counsel for the Debtors will submit to the Court a form of order, which contains (among other things) findings that (i) the Sale Notice Procedures have been satisfied, (ii) no objection to the De Minimis Sale Notice was timely made or such objection has been resolved, (iii) the Debtors may proceed with the proposed sale free and clear of all security interests, liens, claims, encumbrances, and interests, and (iv) the sales or transfers of the Miscellaneous Additional Equipment shall be deemed arm's length transactions conducted in good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.

e. If the Debtors receive a written objection prior to the expiration of the De Minimis Sale Objection Period, and the Debtors are unable to resolve such objection, the Debtors will not take any additional steps to consummate the sale of the particular asset which is the subject of the objection (but may proceed to sell any other Miscellaneous Additional Equipment set forth in the De Minimis Sale Notice to which no objection was timely served in accordance herewith) without first obtaining the Court's approval for the sale of that specific asset with respect to which an objection was timely served.

f. Upon Court approval of the order authorizing the Miscellaneous Additional Equipment sale, the Debtors may consummate the proposed sale transaction and take such actions as are necessary to close the sale and obtain the sale proceeds without further notice or Court order.

## C. Procedures for Retention of Broker or Liquidator to Facilitate Sales of Miscellaneous Assets

5. The Debtors are authorized, but not directed, to employ and retain a broker or liquidator to facilitate sales of Miscellaneous Assets in accordance with the procedures set forth below without the need to file an individual retention application or obtain a retention order:

a. In the event the Debtors seek to retain a broker or liquidator to facilitate the sale of Miscellaneous Assets, the Debtors shall file with the Court and serve on the Notice Parties a notice (the "Retention Notice"), listing the same of the liquidator or broker, together with a brief description of the services to rendered and the proposed compensation structure.

b. The Retention Notice shall include a declaration pursuant to section 1746 of title 28 of the United States Code by the proposed liquidator or broker providing that such liquidator or broker does not hold or represent an interest adverse to the estate and is a disinterested person.

c.      The Notice Parties shall have **7 calendar days** after the service of a Retention Notice to object to the retention of such liquidator or broker (the "<u>Retention Objection Deadline</u>"). Any such objections shall be filed with the Court and served upon the Debtors, the Debtors' counsel, the Notice Parties, and the liquidator or broker subject to such objection by the Objection Deadline. If any objection cannot be resolved or withdrawn within **seven (7) days after service** (or on such earlier date as determined by the Debtors in their discretion), upon motion by the Debtors, such objection shall be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the liquidator or broker, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, or if any submitted objection is timely withdrawn or resolved, the Debtors shall be authorized to retain the liquidator or broker as a final matter without further order of the Court, as of the applicable date of engagement.

d.      In the event that the Debtors utilize the services of a liquidator or broker after the Petition Date, the Debtors shall pay such liquidator or broker 100% of the fees and 100% of the disbursements incurred with respect to postpetition services, upon the submission to, and subject to approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and expenses actually incurred; provided, however, that the broker or liquidator's total compensation and reimbursement shall not exceed a fee cap in the aggregate amount of **$75,000** (the "<u>Fee Cap</u>").

e.      If liquidator or broker's fees and expenses exceed the Fee Cap, such liquidator or broker shall file a fee application on account of the excess amount over the applicable limit and apply for compensation and reimbursement of such amount in compliance with Bankruptcy Code §§ 330 and 331 and applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other procedures and orders of the Court. Such applicable liquidator or broker shall be entitled to interim payment of its requested fees and expenses up to the Fee Cap pending the Court's allowance of those requested fees and expenses in excess of the Fee Cap.

**D.      Abandonment Procedures**

6.      Pursuant to section 554 of the Bankruptcy Code, the following abandonment procedures are hereby authorized and approved (the "<u>Abandonment Procedures</u>")

a. The Debtors will give written notice, by electronic mail or overnight mail, of each such proposed abandonment of assets (the "<u>Abandonment Notice</u>") to the Notice Parties.

b. The Abandonment Notice will specify (i) the asset or assets to be abandoned and the abandoning Debtor thereof, (ii) the value of the abandoned assets as reflected on the Debtors' books, or if no such value is available, an estimated value (which value in either case, will not exceed **$50,000**), (iii) the cost of removal and disposal of the assets to be abandoned, and (iv) the reasonable efforts made by the Debtors to locate a purchaser of such assets and the inability to locate any such purchaser.

c. If none of the Notice Parties serves the Debtors with a written objection to the proposed transaction in a manner so that it is actually received by the Debtors within **seven (7) calendar days** after the date the Debtors send the Abandonment Notice (the "<u>Abandonment Objection Deadline</u>") or any such objection is resolved, counsel for the Debtors will submit to the Court a form of order which contains (among other things) findings that (i) the Abandonment Notice Procedures have been satisfied, (ii) no objection to the proposed abandonment was timely made or such objection has been resolved, and (iii) the Debtors may take all reasonable and necessary steps to abandon and dispose of the assets described in the Abandonment Notice, and pay costs associated therewith.

d. Upon Court approval of the order authorizing the abandonment, the Debtors may take such actions as are necessary to abandon the assets and dispose of them without further notice or Court order.

e. If the Debtors receive a written objection prior to the expiration of the Abandonment Objection Deadline, and the Debtors are unable to resolve such objection, the Debtors will not take any additional steps to abandon the assets which are the subject of the objection (but may proceed to abandon any other assets set forth in the Abandonment Notice to which no objection was timely served in accordance herewith) without first obtaining the Court's approval for the abandonment of that specific asset with respect to which an objection was timely served

**E.     Other Provisions.**

7.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

9.      Notwithstanding anything in this Order to the contrary, (a) payments authorized by, and any authorizations contained in, this Order are subject to the terms, conditions, limitations, and requirements of any cash collateral or DIP financing orders entered in these Chapter 11 Cases (together with any approved budgets in connection therewith, the "DIP Financing Orders") and (b) to the extent there is any inconsistency between the terms of such DIP Financing Orders and any action taken or proposed to be taken hereunder, the terms of such DIP Financing Orders shall control.

### # # #   END OF ORDER   # # #

**Submitted by:**

Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile:  817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

4894-5871-6200

**Exhibit 1**

| No. | Location | Description | Serial Number | Model Number | Age (In Years) |
|---|---|---|---|---|---|
| 1 | Indiana | Atlanta Attachment Company Foundation Bagger | 128009061001 | 11390B | 8 |
| 2 | Indiana | C3 Corporation Topper Rollpack #1 | 220283 | RC6050 | 2 |
| 3 | Indiana | Edge Sweets Vertical Saw #1 | 1712 | EL-3 | 25 |
| 4 | Indiana | Edge Sweets Vertical Saw #2 | 1823 | EL-3 | 27 |
| 5 | Indiana | Edge Sweets Horizontal Saw #1 | E-3900 | 60-88PVT | 17 |
| 6 | Indiana | Edge Sweets Horizontal Saw #2 | E-39D | 60-88 | 18 |
| 7 | Indiana | Atlanta Attachment Company Mattress Bagger | 217095021723 | 11390BX | 5 |
| 8 | Indiana | Atlanta Attachment Company Foundation Stretcher | 217147041718 | 1331BC | 5 |
| 9 | Indiana | Atlanta Attachment Company Foundation Stretcher | 207911111606 | 1331BC | 8 |
| 10 | Indiana | C3 Corporation Laminator | 220146 | LCN1250 | 2 |
| 11 | Indiana | 5 Spring Machines | | | 2 |
| 12 | Indiana | Spring Boarder Wire machine | | | 2 |
| 13 | Indiana | Atlanta Attachment Company Tape Edger - Walkaround | | | 15 |
| 14 | Indiana | Atlanta Attachment Company Tape Edger - Walkaround | | | 15 |
| 15 | Indiana | Gribetz International Spring Uncompressor RED | 6365 | | 18 |
| 16 | Virginia (Sewing Area) | Porter Sewing Machine | | | 10 |
| 17 | Virginia (Sewing Area) | Porter | | | 10 |
| 18 | Virginia (Sewing Area) | Porter | | | 10 |
| 19 | Virginia (Sewing Area) | Porter | | | 10 |
| 20 | Virginia (Sewing Area) | Singer | | | 10+ |
| 21 | Virginia (Sewing Area) | Kansai Special | | | 10+ |
| 22 | Virginia (Sewing Area) | Kansai Special | | | 10+ |
| 23 | Virginia (Sewing Area) | Kansai Special | | | 10+ |
| 24 | Virginia (Sewing Area) | Singer | | | 10+ |

| No. | Location | Description | Serial Number | Model Number | Age (In Years) |
|---|---|---|---|---|---|
| 25 | Virginia (Sewing Area) | Porter | | | 10+ |
| 26 | Virginia (Sewing Area) | Singer | | | 10+ |
| 27 | Virginia (Sewing Area) | Kansai | | | 10+ |
| 28 | Virginia (Sewing Area) | Kansai | | | 10+ |
| 29 | Virginia (Sewing Area) | James Cash Serger | 18765 | BS75-c | 10+ |
| 30 | Virginia (Sewing Area) | Porter | | | 10 |
| 31 | Virginia (Sewing Area) | Porter | 001112-1235-0103 | PFM-4000 | 10+ |
| 32 | Virginia (Sewing Area) | Porter | | | 10+ |
| 33 | Virginia (Sewing Area) | Porter Long Arm | 682 | POQ.30 | 10+ |
| 34 | Virginia (Sewing Area) | Porter | | | 8 |
| 35 | Virginia (Sewing Area) | Porter/Juki | 000519-1606-0019 | EST-501-X5 | 4 |
| 36 | Virginia (Sewing Area) | Juki | | | 8 |
| 37 | Virginia (Sewing Area) | Kansai | | | 10+ |
| 38 | Virginia (Quilting Area) | Vinyl cutter | | PC6 | 18 |
| 39 | Virginia (Quilting Area) | GSB Border slitter | BST-082 | BST-082 | 18 |
| 40 | Virginia (Quilting Area) | Quilter | 13112-14 100-88 | G11300-II | 20 |
| 41 | Virginia (Quilting Area) | Gribetz Quilter | 2109 | DG2000 | 20 |
| 42 | Virginia (Quilting Area) | Gribetz Quilter | 47106M | Reliance 4 plus | 16 |
| 43 | Virginia (Quilting Area) | Gribetz Quilter | 47104M | Reliance M4+ | 14 |
| 44 | Virginia (Quilting Area) | Gribetz Quilter | 45588P | Paragon4 | 10 |
| 45 | Virginia (Quilting Area) | Gribetz panel cutter | | | 15 |
| 46 | Virginia (Saw Area) | Edge Sweets Vertical | 500-644 | CL3 | 15 |
| 47 | Virginia (Saw Area) | Wellsaw | 3244 | 1118 | 15 |

4894-5871-6200

| No. | Location | Description | Serial Number | Model Number | Age (In Years) |
|---|---|---|---|---|---|
| 48 | Virginia (Saw Area) | Edge Sweets Vertical | | EL3 | 15 |
| 49 | Virginia (Saw Area) | Edge Sweets Horiz | 5220 | 50-88 | 15 |
| 50 | Virginia (Saw Area) | Edge Sweets Horiz | 500-644 | 50-88 PVT | 15 |
| 51 | Virginia (Tape Edgers) | Walk around Mattress Machinery | | | 20 |
| 52 | Virginia (Tape Edgers) | Walk around Mattress Machinery | 2350 | NR | 20 |
| 53 | Virginia (Tape Edgers) | Walk around – with lock stitch head | | | 20 |
| 54 | Virginia (Tape Edgers) | Walk around – with lock stitch head | | | 20 |
| 55 | Virginia (Tape Edgers) | Tape Master - Gribetz | TM131 | | 18 |
| 56 | Virginia (Tape Edgers) | Tape Master – Gribetz | TM156 | | 18 |
| 57 | Virginia (Tape Edgers) | Tape Master – Gribetz | TM183 | | 18 |
| 58 | Virginia (Tape Edgers) | Tape Master - Gribetz | TM158 | | 18 |
| 59 | Virginia (Misc.) | Compactor – National | 8-583 | HY 72-A | 15 |
| 60 | Virginia (Misc.) | Compactor – National | 1-787 | HY 72-A | 15 |
| 61 | Virginia (Misc.) | Compactor – Gilbreath | GVB0519 | HD22003060 | 15 |
| 62 | Virginia (Misc.) | Gribetz Spring Opener | BK-6 | 6319 | 18 |
| 63 | Virginia (Misc.) | Gribetz Spring Opener | BK-6 | 6294 | 18 |
| 64 | Virginia (Misc.) | Air Compressor – Kaeser | | CS-90 | 15 |
| 65 | Virginia (Misc.) | Air Dryer – Kaeser | KRD600-9504-0009K | KRD600 | 15 |
| 66 | Virginia (Misc.) | Air Compressor – Kaeser | | AS-30 | 15 |
| 67 | Virginia (Misc.) | Air Compressor – Kaeser | | AS-30 | 15 |
| 68 | Virginia (Misc.) | Merello Bagger | | ME-105 | 8 |
| 69 | Virginia (Misc.) | Sortlife Topper/Roller | | | 8 |
| 70 | Virginia (Misc.) | Schmidt Machine Mattress Stuffer | 1103 | ICF-60 | 8 |
| 71 | Virginia (Misc.) | Gribetz Automated Conveyor (With 4 Walk Through Sections by Tape Masters) | | | 18 |

3