Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER AUTHORIZING THE RETENTION OF A&G REALTY
PARTNERS, LLC AS DEBTORS' REAL ESTATE CONSULTANT AND
ADVISOR EFFECTIVE AS OF THE PETITION DATE PURSUANT TO
LOCAL BANKRUPTCY RULE 2014-1(b)(1)**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON
AUGUST 8, 2022, AT 1:30 P.M. VIA WEBEX AT
HTTPS://US-COURTS.WEBEX.COM/MEET/MORRIS**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST
RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED
BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH
THE CLERK OF THE BANKRUPTCY COURT AT 501 W. 10TH**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

**STREET, ROOM 147, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON AUGUST 5, 2022 WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Corsicana Bedding, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Debtors") hereby file this *Debtors' Application for Entry of an Order Authorizing the Retention of A&G Realty Partners, LLC as Debtors' Real Estate Consultant and Advisor Effective as of the Petition Date Pursuant to Local Bankruptcy Rule 2014-1(b)(1)* (the "Application"). In support of the Application, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1.      The United States District Court for the Northern District of Texas (the "District Court") has jurisdiction over the subject matter of this Application pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On June 25, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned cases (the "Chapter 11 Cases"). The Debtors continue to manage

2

4889-4972-1383

and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      On July 8, 2022, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases. No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Application and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Michael Juniper in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "Juniper Declaration").[2]

**Relief Requested**

5.      The Debtors request the entry of an order, substantially in the form attached to the Application as **Exhibit A**, authorizing the retention and employment of A&G Realty Partners, LLC ("A&G") as a real estate consultant and advisor effective as of the Petition Date, pursuant to Bankruptcy Code §§ 327(a) and 328(a), Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014 and 2016 for the purpose of providing necessary real estate consulting and advisory services in connection with the Debtors' Chapter 11 Cases and in accordance with the terms and conditions set forth in that certain services agreement dated as of May 16, 2022 (the "Services Agreement"),[3] a copy of which is attached hereto as **Exhibit B** and approving the terms of A&G's employment, including the fee and expense structure set forth in the Services Agreement. In support of the Application, the Debtors rely on the *Declaration of Emilio Amendola in Support of Debtors'*

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Juniper Declaration.

[3] Any references to, or summaries of, the Services Agreement in this Application are qualified by the express terms of the Services Agreement, which shall govern if there is any conflict between the Services Agreement and such summaries or references herein. Additionally, any capitalized terms used in this Application and not otherwise defined shall have the meaning given to them in the Services Agreement.

3

*Application for Entry of an Order, Pursuant to 11 U.S.C. §§ 327(a), 328(a) and 1107(b) Authorizing the Retention of A&G Realty Partners, LLC as Debtor's Real Estate Consultant and Advisor Effective as of the Petition Date* (the "<u>Amendola Declaration</u>"), which is attached hereto as **<u>Exhibit C</u>**. In further support of the Application, the Debtors respectfully represent as follows:

**Basis for Relief Requested**

6. The bases for the relief requested herein are Bankruptcy Code §§ 327(a), 328(a), and 1107(b), as supplemented by Bankruptcy Rules 2014 and 2016 and Bankruptcy Local Rules 2014 and 2016.

7. Bankruptcy Code § 327(a) provides that a debtor, subject to Court approval:

[M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor]'s duties under this title.

11 U.S.C. § 327(a). Bankruptcy Code § 101 defines "disinterested person" as a person that:

is not a creditor, an equity security holder, or an insider; [or] is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of Debtor; and…does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtor, or for any other reason.

*Id.* at § 101(14)(A)–(C). Bankruptcy Code § 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of Debtor before the commencement of the case." *Id.* at § 1107(b).

8. Bankruptcy Code § 328(a) provides that a debtor-in-possession may, with the Court's approval, employ a professional "on any reasonable terms and conditions of employment,

including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." *Id.* at § 328(a).

9. Due to the inherent uncertainty in bankruptcy cases, courts have approved arrangements similar to the fee structure in the Services Agreement under Bankruptcy Code § 328 where such arrangements contain "reasonable" terms and conditions.

10. The fee structure set forth in the Services Agreement appropriately reflects the nature and scope of services to be provided by A&G and A&G's substantial experience with respect to real estate consulting and advisory services, particularly in out-of-court restructurings and Chapter 11 contexts, and is consistent with the fee structures typically utilized by A&G and other leading real estate consultants who do not bill their clients on an hourly basis.

11. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a relevant change was made to section 328(a), which is highlighted in bold below:

> The trustee, or a committee appointed under Section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis**, or on a contingent fee basis.

*Id.* (emphasis added). This change removes any doubt regarding the Debtors' ability to retain A&G, with Court approval, on a fixed or percentage fee basis, such as the fee structure described below and set forth in the Services Agreement.

12. The Services Agreement appropriately reflects: (i) the nature and scope of services to be provided by A&G; (ii) A&G's substantial experience with respect to real estate consulting and advisory services and (iii) the fee structures typically utilized by A&G and other leading real estate consultants in the industry.

13.     The Debtors request authorization to retain A&G as their real estate consultant and advisor to render services in connection with the various issues that will arise with landlords during these Chapter 11 Cases. The Debtors respectfully submit that the services of a real estate consultant and advisor are necessary and appropriate to assist in the renegotiation or termination of the Debtors' commercial real property leases (the "Leases") during the pendency of these cases.

## A&G's Qualifications

14.     The Debtors selected A&G to act as their exclusive real estate consultant and advisor because A&G is a well-known, reputable and diversified real estate consulting and advisory firm with offices located throughout the United States. The principals of A&G, combined, have over 50 years of commercial real estate experience and have extensive knowledge and expertise in the retail industry. A&G evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate. A&G's professionals have extensive experience in providing services regarding the review, analysis, restructuring, disposition and negotiation of real property and lease agreements, inside and outside of bankruptcy.

15.     Additionally, A&G has significant experience in the disposition and renegotiation of leases and properties in bankruptcy. A&G's professionals have assisted, advised or been retained as real estate consultants in a variety of bankruptcy cases involving issues relating to the review, analysis, renegotiation, and disposition of key real property and lease agreements. *See*, *e.g.*, *In re Tuesday Morning Corporation,* Case No. 20-31476 (HDH) (Bankr. N.D. Tex. July 9, 2020); *In re Earth Fare, Inc.,* No. 20-10256 (KBO) (Bankr. D. Del. Feb. 26. 2020) [Docket No. 226]; *In re Mattress Firm, Inc.,* No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018) [Docket No. 766]; *In re The Bon-Ton Stores, Inc.*, No. 18-10248-MFW (Bankr. D. Del. March 6, 2018) [Docket No. 298]; *In re Charming Charlie Holdings Inc.*, No. 17-12906-CSS (Bankr. D. Del. Jan. 10, 2018)

4889-4972-1383

[Docket No. 292]; and *In re TZEW Holdco LLC, et al.,* No. 20-10910 (CSS) (Bankr. D. Del. May 5, 2020) [Docket No. 185].

16.     Finally, A&G has worked with the Debtors prior to the filing of these Chapter 11 Cases and has gained extensive knowledge regarding the Debtors and their leases. Therefore, the Debtors believe that A&G is well qualified to perform all services contemplated by the Services Agreement, and to represent the Debtors' interests in the Chapter 11 Cases in a cost effective, efficient and timely manner.

## Scope of Services

17.     Subject to Court approval, and as set forth in the Services Agreement, A&G will provide the following Services[4] to the Debtors:

- Consult with the Debtors to discuss the Debtors' goals, objectives and financial parameters in relation to the Leases;

- Provide ongoing advice and guidance related to individual financing and non-financial lease restructuring opportunities;

- Negotiate with the landlords of the Leases on behalf of the Debtors to obtain Lease Modifications;

- Negotiate with the landlords and other third parties on behalf of the Debtors to obtain Lease Terminations acceptable to the Debtors;

- Negotiate with the landlords on behalf of the Debtors to obtain Early Termination Rights;

- Report periodically to the Debtors regarding the status of the Services; and

- Coordinate with the Debtors' internal and legal teams to resolve any business problems that may arise.

18.     It is necessary for the Debtors to employ A&G to render the foregoing professional services to enable the Debtors to maximize the value of the Leases, and is in the best interests of the Debtors, their estates and their creditors. Therefore, the Debtors request that A&G perform the

---

[4] Capitalized terms shall have the meaning ascribed to them in the Services Agreement.

Services set forth in the Services Agreement and summarized herein, subject to the Court's approval of this Application, and A&G has stated its desire, willingness, and ability to act as the Debtors' real estate consultant and advisor in these cases.

19.     The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in the Chapter 11 Cases. Specifically, A&G will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the Debtors' other professionals to avoid the unnecessary duplication of services. No professional currently engaged by the Debtors is specifically tasked with the same Services as those set forth in the Services Agreement.[5]

**<u>Compensation</u>**

20.     The Debtors request that the Court authorize the retention of A&G under the terms and conditions set forth in the Services Agreement, and the Debtors request authority to compensate and reimburse A&G in accordance with the payment terms, procedures, and conditions set forth in the Services Agreement for services rendered and expenses incurred in connection with the Chapter 11 Cases. The Services Agreement's terms and conditions provide the following:

(i)     <u>Security Retainer.</u> The Debtors paid a retainer in the amount of one hundred seventy-five thousand dollars ($25,000.00) upon execution of the Services Agreement. The retainer is non-refundable and shall be applied to the final invoice for fees and expenses due under the Services Agreement.

(ii)     <u>Monetary Lease Modifications</u>. For each Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings per Lease.

---

[5] The Debtors employ their own real estate personnel. Acknowledging same, and as set forth below, the Services Agreement provides that if a Monetary Lease Modification is obtained with the direct assistance of a real estate director employed by the Debtors, A&G's fee shall be one percent (1%) of the Occupancy Cost Savings for such Lease.

(iii)    <u>Lease Terminations.</u> For each Lease Termination obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings.

(iv)    <u>Non-Monetary Lease Modifications</u>. For each Non-Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of ¼ of one (1) month's Gross Occupancy Cost per Lease.

(v)    <u>Early Termination Rights.</u> For each Early Termination Right obtain by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of ½ of one (1) month's Gross Occupancy Cost per Lease.

(vi)    <u>Fees</u>. A&G shall provide the Debtors with a deal sheet with the terms of the proposed Lease Modification, Lease Termination, or Early Termination Right (the "<u>Deal Sheet</u>"). A Deal Sheet can include, inter alia, an email or other written communication from A&G setting forth the terms of the proposed Service. If (i) the Debtors approve or have deemed to approve the terms of the Deal Sheet and the Landlord or other third party (if applicable) submits, approves, or executes a Document that reflects the Debtors' accepted or deemed accepted Deal Sheet; (ii) the Debtors approve a Document that embodies a Lease Modification, Lease Termination or Early Termination Right to be transmitted to a Landlord and that Landlord agrees to the terms of such Document with no contingencies pursuant to Landlord's signature to the Document or confirming email; or (iii) the Company begins to receive the benefit of the terms set forth in the Deal Sheet, A&G shall be entitled to, and be paid, its fees in accordance with the above fee structure. A&G is entitled to its fees notwithstanding the fact that the Service transaction is not fully executed. A Service may include more than one fee. The Debtors shall pay all fees to A&G within five (5) business days of the receipt of an invoice therefor

21.    Additionally, the Debtors shall reimburse A&G for A&G's reasonable out-of-pocket expenses incurred in connection with its retention and services including, but not limited to, legal, mailing and marketing expenses. Any reimbursable expenses shall be paid to A&G within ten (10) days of the Debtors' receipt of invoice.

22.    The Debtors respectfully submit that the compensation structure set forth above and in the Services Agreement is fair and reasonable and should be approved under Bankruptcy Code

§ 328(a), which specifically authorizes compensation of a professional person on a "fixed or percentage fee basis. 11 U.S.C. § 328(a).

23.     The Debtors believe that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar structure to A&G for comparable engagements, both in and out of bankruptcy. Furthermore, the Debtors believe that the compensation structure is consistent with A&G's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this case.

24.     The Debtors also believe that the fee structure is on reasonable terms and conditions of employment and should be approved under Bankruptcy Code § 328(a). The fee structure is reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, and (c) A&G's substantial experience with respect to real estate consulting and advisory services.

25.     The fee structure appropriately reflects the nature and scope of services to be performed by A&G in the Chapter 11 Cases and the fee structures typically utilized by A&G.

26.     The terms and conditions of the Services Agreement were negotiated by the Debtors and A&G at arm's-length and in good faith. The Debtors respectfully submit that the fees, expense reimbursement, and other provisions contained in the Services Agreement, viewed in conjunction with the other terms of A&G's proposed retention, and as modified in the proposed Order attached hereto are reasonable and in the best interests of the Debtors and their estates and creditors in light of the fact that the Debtors require A&G's services to maximize the value of the Debtors' estates for all parties in interest. A&G's extensive knowledge of the Debtors and their Leases will be beneficial to the Debtors' estate and creditors and will help eliminate additional

time to bring another firm up to date on the Debtors and its Leases. Further, A&G is well qualified

to perform all services contemplated by the Service Agreement and to represent the Debtors'

interests in the Chapter 11 Cases, in a cost-effective, efficient, and timely manner. Accordingly,

as part of this application, the Debtors respectfully request that the Court approve the terms of the

Services Agreement.

## Exclusivity

27.     The Services Agreement contains the following exclusivity language: "During the

duration of this [Services] Agreement, A&G shall have the sole and exclusive authority to perform

the Services for the Leases set forth on Schedule A. The [Debtors] agree to forward to A&G all

relevant inquiries regarding the Leases made to the [Debtors,] their representatives or related

parties. Schedule A may be amended from time to time during the term of this [Services]

Agreement to add additional Leases or to delete any Leases upon mutual written consent by the

Parties."

## Allowance of Fees and Expenses

28.     Due to the transactional fee structure of the engagement, requiring A&G to file

periodic fee applications pursuant to Bankruptcy Code §§ 330 and 331 and in compliance

with Bankruptcy Rule 2016 is unnecessary. Given the transactional nature of A&G's engagement,

the Debtors submit that recording and submission of detailed time entries for services rendered in

this case is unnecessary and would be unduly burdensome to A&G.

29.     As set forth in the Amendola Declaration, it is standard practice in A&G's industry

for professionals providing services relating to lease modifications and other lease restructuring

services to be compensated on a flat fee percentage basis, rather than on an incremental hourly

basis, for such services. A&G has informed the Debtors that, consistent with industry practice,

4889-4972-1383

they intend to bill the Debtors on a flat fee percentage basis for the fixed fee services set forth in the Services Agreement.

30. Under the circumstances, the Debtors submit that it is appropriate and reasonable for A&G to be compensated pursuant to the terms of the Services Agreement without being required to file interim fee applications as contemplated by Bankruptcy Code §§ 330 and 331.

31. The Debtors propose that for all fees and expenses incurred in connection with the Services, A&G be paid 100% of the amount due upon submission of an acceptable invoice to the Debtors. Upon completion of their work for the Debtors, A&G will file a final fee application for review by the Court and parties in interest pursuant to Bankruptcy Code § 328(a) for all Services. The Debtors believe that applications submitted in the manner set forth herein will provide the Court and other parties in interest with sufficient information to monitor the amount and types of services rendered to the Debtors by A&G. Accordingly, the Debtors request that the Court modify any applicable requirements and permit A&G to receive compensation in the manner set forth herein. Except as described herein, no commitments have been made or received by A&G, nor any member thereof, as to compensation or payment in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code and orders of this Court. A&G has not shared or agreed to share any of its compensation from the Debtors with any other person, other than principals and employees of A&G, as permitted by Bankruptcy Code § 504.

**Bankruptcy Rule 2014 Disclosures**

32. To the best of the Debtors' knowledge, information, and belief, A&G has no connection with the Debtors' creditors, parties-in-interest or affiliates, the U.S. Trustee, or any

person employed in the Office of the United States Trustee, except as may be set forth in the Amendola Declaration, which is annexed hereto as **Exhibit C**.

33. To the best of the Debtors' knowledge as disclosed herein and in the Amendola Declaration, (a) A&G is a "disinterested person" within the meaning of Bankruptcy Code § 101(14), as required by Bankruptcy Code § 327(a), and does not hold or represent an interest adverse to the Debtors' estates, and (b) A&G has no connection to the Debtors, their creditors, or related parties except as may be disclosed in the Amendola Declaration.

34. To check and clear potential conflicts of interest in this Chapter 11 Cases, A&G performed a connections check on the Debtors and other significant parties-in-interest (collectively, the "Potential Parties-in-Interest"). The identities of the Potential Parties-in-Interest are set forth in Schedule 1 to the Amendola Declaration and were provided to A&G by the Debtors. A&G reviewed the list of Potential Parties-in-Interest to determine its connections to the Potential Parties-in-Interest. Except as disclosed in the Amendola Declaration, A&G has indicated that based on the results of its review conducted to date, and to the best of its knowledge, neither A&G, nor any other employee that will work on this engagement, has any connection with the Debtors, its creditors, equity holders, or any other Potential Parties-in-Interest (as reasonably known to A&G) or the Debtors' attorneys and accountants, or the United States Trustee, or any person employed in the office of the United States Trustee.

35. A&G will review its files periodically during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, A&G will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

**The Requested Relief is Reasonable and in the Best Interest of the Debtors**

36.     The Debtors believe that the fee structure consists of reasonable terms and conditions of employment and should be approved under Bankruptcy Code § 328(a). The fee structure is reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, and (c) A&G's substantial experience with respect to real estate consulting and advisory services. The fee structure appropriately reflects the nature and scope of services to be performed by A&G in the Chapter 11 Cases and the fee structures provisions typically utilized by A&G.

37.     The terms and conditions of the Services Agreement were negotiated by the Debtors and A&G at arm's-length and in good faith. The Debtors respectfully submit that the fee, expense reimbursement, and other provisions contained in the Services Agreement, viewed in conjunction with the other terms of A&G's proposed retention, and as modified in the proposed order attached hereto as <u>Exhibit A</u>, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require A&G's services to maximize the value of the Debtors' estates for all parties in interest. A&G's extensive knowledge of the Debtors and their Leases will be beneficial to the Debtors' estates and creditors and will help eliminate additional time to bring another firm up to date on the Debtors and its Leases. Further, A&G is well qualified to perform all services contemplated by the Service Agreement and to represent the Debtors' interests in the Chapter 11 Cases, in a cost-effective, efficient, and timely manner. Accordingly, as part of this application, the Debtors respectfully request that the Court approve the terms of the Services Agreement.

38.     For the reasons set forth above, the Debtors submit that A&G's retention is necessary and in the best interests of the Debtors, their estates, and their creditors.

**Notice**

39.    Notice of this Application will be provided to the parties listed on the Debtors' complex service list in accordance with the *Order Granting Complex Chapter 11 Bankruptcy Case Treatment*.

**Conclusion**

**WHEREFORE**, based on the foregoing, the Debtors respectfully request that the Court (i) grant the Application, and (ii) grant such other and further relief as is just and proper.

4889-4972-1383

RESPECTFULLY SUBMITTED this 15th day of July, 2022.

Corsicana Bedding, LLC, *et al.*

*/s/ Michael Juniper*
Name: Michael Juniper
Title: Chief Restructuring Officer

**HAYNES AND BOONE, LLP**

By: */s/ Stephan M. Pezanosky*
Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

4889-4972-1383

## **EXHIBIT A**

## **PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**ORDER GRANTING DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION OF A&G REALTY PARTNERS, LLC AS
DEBTORS' REAL ESTATE CONSULTANT AND ADVISOR EFFECTIVE AS OF THE
PETITION DATE PURSUANT TO LOCAL BANKRUPTCY RULE 2014-1(b)(1)**

Upon the *Debtors' Application for Entry of an Order Authorizing the Retention of A&G*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

*Realty Partners, LLC as Debtors' Real Estate Consultant and Advisor Effective as of the Petition Date Pursuant to Local Bankruptcy Rule 2014-1(b)(1)* (the "<u>Application</u>")[2] of Corsicana Bedding, LLC, *et al.* (collectively, the "<u>Debtors</u>"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, Miscellaneous Rule No. 33 (N.D. Tex. August 3, 1984); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application; and the Court having held a hearing on the Application; and all objections, if any, to the Application have been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the Court having further found that A&G Realty Partners, LLC ("<u>A&G</u>") (a) holds no interest adverse to the Debtors or the estates in the matters upon which it is sought to be engaged; (b) is a disinterested person as that term is defined pursuant to Bankruptcy Code § 101(14) and as required by § 327; and (c) has disclosed any connections with the Debtors, creditors, any other party in interests, their respective attorneys and accounts, the United States Trustee, or any person employed in the office of the United States Trustee as required by Bankruptcy Rule 2014; and it further appearing that none of the representations or engagements set out in the *Declaration of Emilio Amendola in Support of Debtors' Application for Entry of an Order, Pursuant to 11 U.S.C. §§ 327(a), 328(a) and 1107(b) Authorizing the Retention of A&G Realty Partners, LLC as Debtors' Real Estate Consultant and Advisor Effective as of the Petition*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

*Date* constitute a conflict-of-interest or impair the disinterestedness of A&G or otherwise preclude Debtors' retention of A&G in these Chapter 11 Cases; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Application is granted as set forth herein, effective as of the Petition Date.

2.     Pursuant to Bankruptcy Code §§ 327(a), 328(a), and 1107(b), Debtors are hereby authorized to retain A&G as real estate consultant and advisor in the Chapter 11 Cases effective as of the Petition Date under the terms and conditions set forth in the Application and the Services Agreement

3.     A&G is authorized to perform any and all real estate consulting and advisory services for Debtors that are necessary or appropriate in connection with the Chapter 11 Cases.

4.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, Orders of this Court, or any guidelines regarding submission and approval of fee applications, A&G shall be compensated pursuant to the terms of the Services Agreement without being required to file fee applications as contemplated by Bankruptcy Code §§ 330 and 331.

5.     At the conclusion of its services, A&G shall file a final fee application that sets forth a summary of all fees earned and expenses incurred in this case. A&G is permitted to submit such final fee application without time records.

6.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

4889-4972-1383

7.     In the event that the Debtors seek to employ and retain A&G for services not specifically set forth in the Services Agreement, the Debtors and A&G shall file an additional retention application seeking approval of this Court.

8.     Nothing in this Order shall prejudice A&G's ability to seek a bonus or fee enhancement under applicable law.

9.     Paragraph 23 of the Services Agreement relating to the Limitation on Liability shall be null and void during the pendency of these Chapter 11 Cases.

10.     The indemnification and related provisions set forth in the Services Agreement are approved, subject during the pendency of the Chapter 11 Cases to the following: All of A&G's requests for payment of indemnity pursuant to the Services Agreement shall be made by means of an application and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Services Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall A&G be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

11.     Notwithstanding any other provision to the contrary in the Application, A&G shall not be entitled to reimbursement of attorneys' fees and expenses incurred in connection with responses to objections to A&G's fee application. Moreover, A&G shall not be entitled to reimbursement of attorneys' fees and expenses incurred in connection with responses by A&G to requests for information about its fees.

12.     The Debtors and A&G are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13. In the event of any inconsistency between the Services Agreement, the Application and this Order, this Order shall govern.

14. Notwithstanding anything in this Order to the contrary, (a) payments authorized by, and any authorizations contained in, this Order are subject to the terms, conditions, limitations, and requirements of any cash collateral or DIP financing orders entered in these Chapter 11 Cases (together with any approved budgets in connection therewith, the "DIP Financing Orders") and (b) to the extent there is any inconsistency between the terms of such DIP Financing Orders and any action taken or proposed to be taken hereunder, the terms of such DIP Financing Orders shall control.

# # # END OF ORDER # # #

**Submitted by:**

Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

4889-4972-1383

**<u>Exhibit B</u>**

**Services Agreement**



REALTYPARTNERS

# REAL ESTATE SERVICES
# AGREEMENT WITH
# CORSICANA MATTRESS COMPANY

This Real Estate Services Agreement including the Schedules attached hereto (collectively the "Agreement") is made as of May _16_, 2022 (the "Agreement Date") by and between **A&G REALTY PARTNERS, LLC**, a New York limited liability company, with its principal place of business at 445 Broadhollow Road, Suite 410, Melville, New York 11797 ("A&G"), and **CORSICANA MATTRESS COMPANY**, a Texas corporation, with its principal place of business at 1420 W Mockingbird Lane, Suite 800, Dallas, TX, 75247-4932 (including its affiliates and subsidiaries, the "Company" and, together with A&G, collectively the "Parties" and, individually, a "Party").

<u>WITNESSETH</u>:

**WHEREAS**, the Company is the lessee or sublessee of certain non-residential real property leases (each a "Lease" and, collectively, the "Leases") identified on <u>Schedule A</u>, which is attached hereto and incorporated herein;

**WHEREAS**, the Company desires to: (i) reduce or amend its obligations under the Leases by modifying the terms and conditions thereof or reduce risk and provide optionality under certain Leases; (ii) obtain the right to terminate certain Leases prior to their expiration date; and (iii) obtain other real estate consulting and advisory services as set forth herein; and

**WHEREAS**, under the terms and conditions contained in this Agreement, the Company desires to retain A&G and A&G is willing to provide the Services.

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  <u>Services to be Provided</u>.  In accordance with the terms and conditions of this Agreement, A&G will provide the following services (the "Services"):

    a)  consult with the Company to discuss the Company's goals, objectives and financial parameters in relation to the Leases;

    b)  provide ongoing advice and guidance related to individual financial and non-financial lease restructuring opportunities;

    c)  negotiate with the landlords of the Leases (collectively, the "Landlords" and, individually, a "Landlord") on behalf of the Company to obtain Lease Modifications (as defined herein);

    d)  negotiate with Landlords and other third parties on behalf of the Company to obtain Lease Terminations (as defined below) acceptable to the Company;

    e)  negotiate with Landlords on behalf of the Company to obtain Early Termination Rights (as defined herein); and

2

f) provide regular update reports to the Company regarding the status of the Services.

2. <u>Term of Agreement</u>. Subject to Section 15 herein, this Agreement shall be for a term of one (1) year following the Agreement Date (the "<u>Term</u>"). In the event the Services are not completed at the end of the Term, the Agreement may be extended or renewed by written agreement of the Parties.

3. <u>Compensation</u>. The compensation for the Services is set forth on <u>Schedule B</u>, which is attached hereto and incorporated herein ("<u>Compensation</u>"). The Company acknowledges that the calculations necessary to determine Compensation are predicated on Company Information (as that term is defined below) provided by the Company to A&G. Any material discrepancies, inaccuracies or omissions in the Company Information may affect the Compensation payable to A&G.

4. <u>Additional Services.</u> A&G may provide additional services requested by the Company that are not otherwise specifically provided for in this Agreement. Any additional services will be mutually agreed upon by the Parties and documented in a separate agreement.

5. <u>Recordkeeping</u>. The Services to be provided by A&G pursuant to this Agreement are, in general, transactional in nature. Accordingly, A&G will not bill the Company by the hour or maintain time records.

6. <u>Expenses and Disbursements</u>. The Company shall reimburse A&G for A&G's reasonable out-of-pocket expenses (including, but not limited to, legal, mailing, marketing) incurred in connection with its retention and provision of Services. This includes, but is not limited to, responding to any litigation or other type of inquiry, deposition or otherwise relating to the Services or this Agreement. Any reimbursable expenses shall be paid to A&G within ten (10) days of receipt of invoice.

7. <u>Exclusive</u>. During the Term of this Agreement, A&G shall have the sole and exclusive authority to perform the Services for the Leases set forth on <u>Schedule A</u>. The Company agrees to forward to A&G all relevant inquiries regarding the Leases made to the Company, its representatives or related parties. <u>Schedule A</u> may be amended from time to time during the term of this Agreement to add additional Leases or to delete any Leases upon mutual written consent by the Parties.

The Company acknowledges that A&G may be engaged to provide the same or similar services as those referenced herein to other persons or entities and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not a conflict of interest or otherwise does not materially interfere with A&G's ability to provide the Services.

3

8.     <u>Company's Representative</u>. Ron Lottman will be the Company's representative ("<u>Company Representative</u>") in dealing with A&G. The Company reserves the right, at any time and from time-to-time, upon written notice to A&G, to designate a successor representative or an additional representative and to limit the authority of the representative in any respect. A&G will report regularly to the Company's Representative in order to keep him/her fully apprised of A&G's performance. The designated principal representatives for A&G will be Emilio Amendola. If A&G seeks to change its principal representative, the Company agrees to reasonably consent to any proposed replacement.

9.     <u>Company Cooperation</u>. The Company shall provide A&G with all information concerning the Leases necessary for the performance of A&G's obligations hereunder, including, but not limited to (a) copies of the Leases and any Lease abstracts, (b) populating an Excel spreadsheet provided by A&G with, among other things, current rents, taxes and other charges relating to the Leases, rent bumps, percentage rent and breakpoints, premises size, the commencement and expiration dates of the Leases, any Lease options, up to date Landlord contact information (including name, email and phone number information for each Landlord), any outstanding or deferred rent, and any default letters sent by Landlords, and (c) such other information as A&G requests for the performance of its Services (collectively, the "<u>Lease Information</u>"). The Company also agrees to complete <u>Schedule A</u>, which shall include any proposed request for each Lease (the "<u>Lease Request</u>"). Additionally, the Company agrees to utilize its own financial analysts to prepare financial models relative to rent reduction requests, while A&G will provide guidance and assumptions to assist the Company in the preparation of the requests.

All information provided by the Company to A&G, including, but not limited to, the Company's goals and objectives, financial information and the Lease Information referenced above, shall collectively be referred to as "<u>Company Information</u>." It is understood and agreed by the Parties that A&G shall have no obligation to verify the accuracy of such information and that A&G shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Company Information. Both Parties understand and agree that A&G shall base its Services on the Company Information and any material inaccuracies, discrepancies or omissions in the information may delay or impede A&G's ability to render the Services. In the event the Company Information turns out to be inaccurate, the Company shall provide such personnel and administrative support as necessary to correct the information. Furthermore, both Parties understand and agree that the commencement of this Agreement and the continuation of its Services are contingent upon A&G's receipt of the Company Information.

Additionally, the Company agrees to assist A&G in the performance of its Services, including but not limited to, by (i) providing a response, within seven (7) business days of A&G's transmittal to the Company of a Deal Sheet (as defined in <u>Schedule B</u>) for each Lease (the "<u>Deal Sheet Deadline</u>"), which states whether a proposed

4

Service transaction is approved or not, and (ii) providing all necessary legal support to review Documents (as defined below) submitted by A&G in connection with a Service and getting all Documents in form and substance acceptable to the Company executed accurately and timely; provided, however, the Company's approval of a proposed Service shall be deemed given if: (a) a Deal Sheet for any Lease is consistent with the Lease Request, or (b) the Company does not respond to a Deal Sheet by the Deal Sheet Deadline. In addition, the Company shall track the status of all Documents through an A&G legal tracking report provided by A&G.

10. Use of Company Name. A&G may use the Company's name and logo to identify the Company as one of A&G's clients.

11. No Authority to Execute Agreements. A&G shall have no right or power to enter into any agreement in the name of or on behalf of the Company or to otherwise obligate the Company in any manner unless authorized in writing.

12. Meetings and Written Reports. After the commencement of the Agreement, A&G shall meet with, in a manner agreed to by the Parties, the Company's Representative(s) to review the Company's goals, objectives and financial parameters. Thereafter, A&G will meet with or participate in telephone conferences with the Company's Representative(s) regarding the status of the Services as mutually agreed to by the Parties.

13. Disclosures/Reports. All information, advice, recommendations (whether written or oral) or any reports, presentations or other communications that A&G provides under the terms of this Agreement are solely for the benefit of the Company and no such opinion, advice, recommendations or reports shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, other than as provided herein, without the prior written consent of A&G. Notwithstanding the foregoing, the Company may provide such information, advice and recommendations to its representatives, consultants, Board of Directors and attorneys as required to effectuate the Services, provided however that both Parties understand and agree that A&G shall have no liability to such Parties and such Parties are not intended to be third-party beneficiaries to this Agreement.

If the Company receives a subpoena, summons or court order by any federal, state or other regulatory agency having jurisdiction over the Company relating in any respect to A&G or its Services, the Company shall promptly notify A&G, if legally permissible, so that A&G may obtain, at its sole cost, a protective order for such information. If A&G is unable to obtain a protective order and the Company is required to provide information regarding A&G and/or the Services, the Company agrees to provide only that information which is legally required and to use reasonable efforts to ensure the confidentiality of such information and documentation.

14. <u>Independent Contractor.</u> Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Company and A&G. A&G shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of the Company.

15. <u>Early Termination.</u> Either Party may terminate this Agreement without cause upon thirty (30) days' prior written notice in accordance with the notice provision below. Additionally, if either Party fails to perform its obligations in accordance with the terms herein and does not cure such failure within ten (10) days after written notice of default, the other Party will have the right to terminate this Agreement by notice of termination to the non-performing Party, effective ten (10) days after the date of such notice. Additionally, if for any reason either Party becomes unable to perform its duties as a result of a legal, contractual or regulatory restriction, such Party shall have the right to terminate this Agreement. Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement.

16. <u>Assignment.</u> Neither Party may delegate or assign its rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party.

17. <u>Bankruptcy.</u>

    a. In the event the Company files for bankruptcy protection during the Term of this Agreement, the Company agrees to promptly apply to the Bankruptcy Court for an order, in a form acceptable to A&G, authorizing the Company to retain A&G effective as of the filing date and to compensate A&G in accordance with the terms of this Agreement, and to use its best efforts to obtain such order. The Company agrees to (a) seek the hiring and retention of A&G under sections 327 and 328 of the Bankruptcy Code and (b) file any applications necessary and otherwise assist A&G in obtaining Bankruptcy Court approval of the payment of its fees and costs hereunder. The Company agrees to provide A&G with a copy of the pleadings requesting retention of A&G prior to submission to the Bankruptcy Court for A&G's review and comments and advise A&G of any objection or hearings pertaining to A&G's retention. The order authorizing A&G's retention must be acceptable to A&G and A&G's obligations hereunder are conditioned upon the grant of such order. Furthermore, if such order is not obtained within thirty days from the date that it is filed, A&G shall have the right to terminate this Agreement at any time thereafter. If an acceptable order is not obtained authorizing A&G's services and fees as set forth herein, the Company agrees to amend the application in conjunction with and the approval of A&G and request a hearing to review the application. In the event the Company is unable to obtain an acceptable order authorizing the hiring and retention of A&G under the terms of this

Agreement and the Agreement is terminated, A&G reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination.

b. Before finalizing any cash collateral/debtor in possession financing budget with its secured lender and filing same with the Bankruptcy Court, the Company shall provide A&G with a reasonable opportunity to review and provide input into the budget regarding its estimated fees and expenses during the relevant budget period(s).

18. <u>Notices.</u> Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

To the Company:        Corsicana Mattress Company
1420 W Mockingbird Lane, Suite 800
Dallas, TX 75247-4932
Ron Lottman, Director
Tel: (847) 323-4593
Email: ron.lottman@cr3partners.com

To A&G:        A&G Realty Partners, LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Attn: Emilio Amendola, Co-President
Tel: (631) 465-9507
Email: emilio@agrep.com

19. <u>Representations, Warranties and Covenants.</u> Each Party has all requisite power and authority to enter into this Agreement. This Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Company and A&G. Each Party represents that this Agreement does not and will not violate any applicable law or conflict with any agreement, instrument, judgment, order or decree to which it is a party or by which it is bound. Furthermore, each Party represents and agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder. Each Party agrees to deal with the other fairly and in good faith so as to allow each Party to perform their duties and earn the benefit of this Agreement. A&G agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement.

20. <u>Survival of Fee.</u> In the event that following the expiration or earlier termination of this Agreement, the Company or its successors or assigns, enters into a transaction with a Landlord or other third party and A&G has substantially performed the Services, which is the proximate cause of the transaction being entered into with such Landlord or other third party and the result of which would have entitled A&G to a fee pursuant to this Agreement, then in that event, A&G shall be entitled to and paid its fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has expired or been terminated. Such Survival of Fee will terminate 120 days after the expiration or earlier termination of this Agreement.

21. <u>Intellectual Property.</u> A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by A&G to the Company, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services.

22. <u>Indemnification.</u> The Company agrees to indemnify A&G and its affiliates, officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all third party claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of A&G or the Company taken pursuant to this Agreement or in any written agreement entered into in connection herewith except to the extent that such claims or liabilities arise as a direct result of A&G's fraud, gross negligence or willful misconduct.

23. <u>Limitation on Liability.</u> Neither Party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder. Neither Party shall be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control. Furthermore, in no event shall A&G's liability for a default or breach of this Agreement exceed the amount of fees paid to A&G hereunder.

24. <u>Binding Effect. No Third-Party Beneficiaries.</u> This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

25. <u>Waivers and Amendments.</u> Waiver by either Party of any default by the other Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule (s) attached hereto) may not be waived, amended, or modified by either Party unless in writing and signed by the Parties hereto.

8

26. <u>Severability</u>.  If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provision or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

27. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

28. <u>Counterpart Execution/Facsimile and Electronic Signatures</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

29. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York without reference to its conflict of laws rules. Any dispute resulting from this Agreement shall be resolved by binding arbitration with the proceedings to be conducted in New York City, New York, by one arbitrator, following the applicable rules of the American Arbitration Association, and administered by a respectable dispute resolution provider as reasonably selected by the Party commencing the proceedings. To the extent arbitration proceedings are not feasible or if to enforce an arbitration award or otherwise, any court action under this Agreement shall be brought in the federal or state courts of the State of New York.  In the event the Company files a Chapter 11 bankruptcy case, then the bankruptcy court presiding over that proceeding shall have exclusive jurisdiction over any matters arising out of or relating to this Agreement.

30. <u>Waiver of Jury Trial</u>.  Each of the Parties unconditionally waives, to the fullest extent allowed by law, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

31. <u>Headings/Tenses</u>.  The section headings and use of defined terms in the singular or plural or past or present tenses in this Agreement are solely for the convenience of the Parties.  To the extent that there may be any inconsistency between the headings and/or the tenses and the intended meaning, the intent of the Parties or the provision, the terms of such provision shall govern.

32. <u>No Presumptions</u>.  This Agreement by shall be deemed drafted by both Parties and there shall be no presumption for or against either Party in the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.

CORSICANA MATTRESS COMPANY

By: _____
Name: J Eric Rhea
Title: Chief Executive Officer

A&G REALTY PARTNERS, LLC

By: _____
Name: Emilio Amendola
Title: Co-President

**Schedules**

Schedule A   Leases/Company Information/Lease Request
Schedule B   Compensation

10

## SCHEDULE A
### Leases/Company Information/Lease Request

## SCHEDULE B
### Compensation

### A.    Definitions

"Document" - shall be defined as an amendment or agreement generated by the Company, a Landlord or third party, that modifies a Lease in any manner. For the avoidance of doubt, a Document also shall include any letter agreement or other binding written communication (including, but not limited to, an e-mail communication) from a Landlord or third party consenting to the applicable Service.

"Early Termination Right" - shall be defined as the Company's exclusive right to terminate the Lease prior to the expiration date of the Lease.

"Gross Occupancy Cost" - shall be defined as the sum of the remaining base rent, any annual increases, percentage rent, CAM, taxes, insurance, rental tax, marketing and merchants' association charges, utility charges, HVAC usage charges, trash removal charges, sprinkler usage charges, unpaid rents, or any other sums due to the Landlord under a particular Lease as of the Agreement Date. For clarification purposes, Gross Occupancy Cost is calculated using the first date that the Service commences (i.e., the date that the rent reduction commences) through the earlier of the end of the Lease term in effect as of the Agreement Date (or longer if a Lease extension is also requested and negotiated by A&G on behalf of the Company) or when the Service is no longer in effect. CAM, taxes, insurance, marketing and merchants' association charges and all other applicable charges will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available). In the event that rent increases periodically based upon the change in the Consumer Price Index (CPI), the assumed annual CPI increase shall be two percent (2%).

"Monetary Lease Modification" - shall be defined as any modification to or inclusion of additional provisions relating to the monetary terms of a Lease agreement, including, but not limited to, reduction in rent/other Lease charges, reduction in Lease Term, reduction in Lease space, termination of/waiver of/free rent or other Lease charges (including any previously deferred rent or other Lease charges), reduction or elimination of any outstanding amounts due under a Lease, the granting of tenant allowance or capital improvement dollars, the waiver of Company's capital expenditure obligations, extensions of existing rent reductions past their original end date, reduction in CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, reductions in or returns of security deposits and FF&E if otherwise non-refundable (either pursuant to the terms of the Lease or as determined by the Landlord), or any other amendment to a Lease that results in Occupancy Cost Savings to the Company.

"Lease Termination" - shall be defined as the consensual termination of a Lease by the Landlord pursuant to which the Company is relieved of all future obligations under that Lease.

12

"New Gross Occupancy Cost" - shall be defined as the reduced Gross Occupancy Cost that results from a Lease Modification or any other amendment to the Lease.

"Non-Monetary Lease Modification" - shall be defined as any modification to the non-monetary terms of a Lease agreement, including, but not limited to, change of use, co-tenancy clause, sublease rights, the negotiation of a lease extension, the granting of an additional option term or terms, an amendment to the current option term or terms (Early Termination Right fees are set forth separately for fee purposes), relocation of Lease spaces that do not result in a reduction in Gross Occupancy Cost and any other amendments to the Lease that is or would be beneficial to the Company that do not fall within the above definition of Monetary Lease Modifications.

"Occupancy Cost Savings" - shall be defined as the difference between the original Gross Occupancy Cost and the New Gross Occupancy Cost for the period from the earlier of the effective date of a Document, the date in which the Lease Modification or other Service becomes effective or the date in which A&G becomes entitled to its Fees under the terms herein, through the end of the Lease Term or the Revised Lease Term pursuant to the terms of the Services, less any payment(s) or costs payable by the Company to effectuate the Lease Modification or other Service, excluding legal fees. "Lease Term" shall be defined as the commencement date and expiration date of the Lease as set forth in the Lease as of the Agreement Date. "Revised Lease Term" shall be defined as the new Lease expiration date pursuant to any Lease extensions obtained by A&G on behalf of the Company. For example, if a Service includes a Monetary Lease Modification and an extension of the Lease, the Occupancy Cost Savings shall be applicable through the duration of the Lease extension (i.e., the Revised Lease Term).

Occupancy Cost Savings include, but are not limited to, reduction in rent/other Lease charges, reduction in term, reduction in Lease space, termination of/waiver of/free rent or other Lease charges (including any previously deferred rent or other Lease charges), reduction or elimination of any outstanding amounts due under a Lease, reduction of unamortized tenant allowance, reduction or elimination of the obligation to repay tenant allowance to the Landlord, reduction or elimination of the requirement to improve the Lease space that have a direct monetary benefit to the Company, the granting of tenant allowance or capital improvement dollars or Landlord improvements to the property, the waiver of Company's capital expenditure obligations, extensions of existing rent reductions past their original end date, any lease extensions that result in a rent decrease, reduction in CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, or any or any other amendment to a Lease that results in direct monetary savings to the Company.

For Occupancy Cost Savings resulting from the extension of a rent reduction past the Lease Term in effect as of the Agreement Date, the savings shall be based upon the original rent and option rent set forth in the Lease, allocated proportionately to the time period during the Lease Term and the extended term, as the case may be. For example purposes only, if A&G obtains a 4-year rent reduction and only 2 years remain on the Lease Term, A&G's fee will be based upon the blended Occupancy Costs Savings resulting from the reduced

13

rent as compared to the rent in effect during the Term for a period of 2 years, and the Occupancy Costs Savings resulting from the reduced rent as compared to the option rent set forth in the Lease, provided the Company exercises such option. For Occupancy Cost Savings resulting from lease extensions where there is no rent increase, the savings shall be based upon the option price for the period of the duration of the extension or if there is no option price, the rent price for the immediately preceding period.

In the event base or gross rent (i.e., contract rent) is converted to percentage rent based on sales, Occupancy Cost Savings will be calculated based on the difference between the contract rent and the percentage rent using sales figures for the twelve (12) months ended January 31, 2022.

B.  **Fees**

A&G shall be compensated for the Services as follows:

1.  <u>Security Retainer</u>. Upon execution of this Agreement, the Company shall provide A&G with a non-refundable retainer in the amount of twenty-five thousand dollars ($25,000.00). The retainer shall be applied to the final invoice for fees and expenses due under the terms of this Agreement.

2.  <u>Monetary Lease Modifications</u>. For each Monetary Lease Modification obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings per Lease.

3.  <u>Lease Terminations</u>. For each Lease Termination obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings.

4.  <u>Non-Monetary Lease Modifications</u>. For each Non-Monetary Lease Modification obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee of ¼ of one (1) month's Gross Occupancy Cost per Lease.

5.  <u>Early Termination Rights</u>. For each Early Termination Right obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee of ½ of one (1) month's Gross Occupancy Cost per Lease.

C.  **Payment of Fees.**

A&G shall provide the Company with a deal sheet with the terms of the proposed Lease Modification, Lease Termination, or Early Termination Right (the "<u>Deal Sheet</u>"). For clarification purposes, a Deal Sheet can include, but not be limited to, an email or other written communication from A&G setting forth the terms of the proposed Service. If: (i) the Company approves or is deemed to have approved the terms of the Deal Sheet and the Landlord or other third party (if applicable) submits, approves or executes a Document

14

that reflects the Company accepted or deemed accepted Deal Sheet; (ii) the Company approves a Document that embodies a Lease Modification, Lease Termination or Early Termination Right to be transmitted to a Landlord and that Landlord agrees to the terms of such Document with no contingencies pursuant to Landlord's signature to the Document or confirming email; or (iii) the Company begins to receive the benefit of the terms set forth in the Deal Sheet, A&G shall be entitled to, and be paid, its fees in accordance with the above fee structure. For the avoidance of doubt, A&G shall be entitled to its fees notwithstanding the fact that the Service transaction is not fully executed by the Company. A Service may incur more than one fee.

The Company shall pay all fees to A&G within ten (10) days of the receipt of an invoice therefor.

**<u>Exhibit C</u>**

**Amendola Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**DECLARATION OF EMILIO AMENDOLA IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION OF A&G REALTY PARTNERS, LLC AS DEBTORS' REAL ESTATE CONSULTANT AND ADVISOR EFFECTIVE AS OF THE PETITION DATE PURSUANT TO LOCAL <u>BANKRUPTCY RULE 2014-1(b)(1)</u>**

I, EMILIO AMENDOLA, under penalty of perjury, declare as follows:

1.       I am Co-President of A&G Realty Partners, LLC ("<u>A&G</u>"). I am authorized to execute and submit this Declaration on behalf of A&G in support of the application (the "<u>Application</u>") of Corsicana Bedding, LLC, *et al.*, the debtors and debtors in possession in the above-captioned chapter 11 cases (the "<u>Debtors</u>") for entry of an order authorizing the employment and retention of A&G as real estate consultant and advisor for the Debtors, effective as of the Petition Date pursuant to Local Bankruptcy Rule 2014-1(b)(1) under the terms and conditions set forth in the Services Agreement, attached to the Application as <u>Exhibit B</u>.[2]

2.       I submit this Declaration in accordance with §§ 327(a) and 328 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014(a) and 2016(b) of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("<u>Corsicana</u>"); Thetford Leasing LLC (7227) ("<u>Thetford</u>"); Olive Branch Building, LLC (7227) ("<u>Olive Branch</u>"); Eastern Sleep Products Company (1185) ("<u>Eastern Sleep</u>"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("<u>Englander Symbol</u>"); Hylton House Furniture, Inc. (5992) ("<u>Hylton House</u>"); Luuf, LLC (3450) ("<u>Luuf</u>"); Symbol Mattress of Florida, Inc. (4172) ("<u>Symbol Florida</u>"); Symbol Mattress of Pennsylvania, Inc. (3160) ("<u>Symbol Pennsylvania</u>"); Symbol Mattress of Wisconsin, Inc. (0871) ("<u>Symbol Wisconsin</u>"); Symbol Mattress Transportation, Inc. (1185) ("<u>Symbol Transportation</u>"); and Master Craft Sleep Products, Inc. (4961) ("<u>Master Craft</u>"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

[2] Capitalized terms used herein shall have the meaning ascribed to them in the Application and the Services Agreement.

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014 and 2016 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas (the "Local Bankruptcy Rules").

3.      The facts set forth in this Declaration are based upon my personal knowledge, information and belief, or client matter records kept in the ordinary course of business that were reviewed by me or other employees of A&G under my supervision and direction. If called and sworn as a witness, I would testify competently to the facts set forth herein.

## Qualification of Professionals

4.      A&G is well suited to provide the real estate services that the Debtors require and have requested that A&G provide in these Chapter 11 Cases. A&G is a well-known, reputable and diversified real estate consulting and advisory firm with offices located throughout the United States. A&G evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate. A&G's expertise includes asset disposition and optimization of property portfolios. A&G's professionals have extensive experience in providing services regarding the review, analysis, restructuring, disposition, and negotiation of real property and lease agreements.

5.      A&G's principals have over 50 years combined of commercial real estate experience, and A&G has significant experience in the disposition and renegotiation of leases and properties in bankruptcy. Indeed, A&G's professionals have assisted, advised or been retained as real estate consultants in a variety of bankruptcy cases involving issues relating to the review, analysis, renegotiation, and disposition of key real property and lease agreements.

6.      In addition, A&G has worked with the Debtors prior to this filing and has acquired extensive knowledge regarding the Debtors and their Leases.

7.      Accordingly, I believe A&G is well qualified to perform all of the services contemplated by the Services Agreement, and to represent the Debtors' interests in the Chapter 11 Cases in a cost-

effective, efficient and timely manner. I also believe that the Services are necessary to enable the Debtors to maximize the value of their Leases and enable the Debtors to emerge from Chapter 11.

8.      Additionally, I believe that the Services that will be provided under the Services Agreement will be complementary rather than duplicative of the services to be performed by the Debtors' other professionals retained in the Chapter 11 Cases. Furthermore, A&G will carry out its functions and will use reasonable efforts to coordinate with the Debtors and their other professionals retained in these Chapter 11 Cases to avoid any unnecessary duplication of services.

## Services to be Provided

9.      As set forth more fully in the Services Agreement, A&G will provide the following services for the Debtors (the "Services"):

- Consult with the Debtors to discuss the Debtors' goals, objectives and financial parameters in relation to the Leases;

- Provide ongoing advice and guidance related to individual financing and non-financial lease restructuring opportunities;

- Negotiate with the landlords of the Leases on behalf of the Debtors to obtain Lease Modifications;

- Negotiate with the landlords and other third parties on behalf of the Debtors to obtain Lease Terminations acceptable to the Debtors;

- Negotiate with the landlords on behalf of the Debtors to obtain Early Termination Rights;

- Report periodically to the Debtors regarding the status of the Services; and

- Coordinate with the Debtors' internal and legal teams to resolve any business problems that may arise.

## Professional Compensation

10.      Subject to the Court's approval, the Debtors will compensate A&G in accordance with the terms and conditions set forth in the Services Agreement, including Schedule B thereto. It is contemplated that A&G shall be compensated as follows:

(i)      Security Retainer. The Debtors paid a retainer in the amount of one hundred seventy-five thousand dollars ($25,000.00) upon execution of the Services

Agreement. The retainer is non-refundable and shall be applied to the final invoice for fees and expenses due under the Services Agreement.

(ii)     <u>Monetary Lease Modifications</u>. For each Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings per Lease.

(iii)    <u>Lease Terminations.</u> For each Lease Termination obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee in the amount of five percent (5%) of the Occupancy Cost Savings.

(iv)    <u>Non-Monetary Lease Modifications</u>. For each Non-Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of ¼ of one (1) month's Gross Occupancy Cost per Lease.

(v)     <u>Early Termination Rights.</u> For each Early Termination Right obtain by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of ½ of one (1) month's Gross Occupancy Cost per Lease.

(vi)    <u>Fees</u>. A&G shall provide the Debtors with a deal sheet with the terms of the proposed Lease Modification, Lease Termination, or Early Termination Right (the "<u>Deal Sheet</u>"). A Deal Sheet can include, inter alia, an email or other written communication from A&G setting forth the terms of the proposed Service. If (i) the Debtors approve or have deemed to approve the terms of the Deal Sheet and the Landlord or other third party (if applicable) submits, approves, or executes a Document that reflects the Debtors' accepted or deemed accepted Deal Sheet; (ii) the Debtors approve a Document that embodies a Lease Modification, Lease Termination or Early Termination Right to be transmitted to a Landlord and that Landlord agrees to the terms of such Document with no contingencies pursuant to Landlord's signature to the Document or confirming email; or (iii) the Company begins to receive the benefit of the terms set forth in the Deal Sheet, A&G shall be entitled to, and be paid, its fees in accordance with the above fee structure. A&G is entitled to its fees notwithstanding the fact that the Service transaction is not fully executed. A Service may include more than one fee. The Debtors shall pay all fees to A&G within five (5) business days of the receipt of an invoice therefor.

11.    In the ninety days immediately preceding the Petition Date, the Debtors paid A&G the retainer fee as noted above from the Debtors in connection with these Chapter 11 Cases. A&G has not received any other payments from the Debtors and has no outstanding invoices for services rendered.

12.    A&G also intends to seek reimbursement for its actual, reasonable out-of-pocket expenses (including, but not limited to, legal, mailing and marketing) incurred in connection with its retention and performance of Services. Any reimbursable expenses shall be paid to A&G within ten (10) days

of the Debtors' receipt of invoice.

13.     All reimbursable expenses for goods or services provided by third parties will be billed and payable without markup by A&G, and with respect to reimbursable expenses incurred by A&G directly will represent the actual expense to A&G for providing such goods or services.

14.     I believe that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar stature to A&G for comparable engagements, both in and out of bankruptcy. Furthermore, the proposed compensation structure is also consistent with A&G's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in the Chapter 11 Cases.

### Payment of Fees and Expenses

15.     A&G understands that fees and expenses in the Chapter 11 Cases shall be subject to final approval of the Court upon proper application by A&G in accordance with procedures for the allowance of final compensation applicable to professionals in the Chapter 11 Cases, and in accordance with the requirements of the Bankruptcy Code. However, inasmuch as A&G is being retained under Bankruptcy Code § 328 and A&G's compensation is results-oriented and directly related to the benefits received by the Debtors' estates as a result of the lease modification transactions, A&G has informed the Debtors that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. It is standard practice in A&G's industry for professionals providing services relating to lease modifications to be compensated on a flat fee or percentage basis, rather than on an incremental hourly basis, for such services. Consistent with industry practice, A&G intends to bill the Debtors on a flat fee percentage basis for the Services as set forth in the Services Agreement.

16.     Therefore, A&G submits that the requirement to file detailed time records and periodic

fee applications in accordance with Bankruptcy Code §§ 330 and 331, and in compliance with Bankruptcy Rule 2016 and other applicable bankruptcy rules, is unnecessary and burdensome under the circumstances. A&G requests that these requirements be waived. A&G, will however, file a final fee application in accordance with applicable Bankruptcy Rules, Local Bankruptcy Rules and any other orders of this Court upon completion of their Services for review pursuant to Bankruptcy Code § 328.

### **Disinterestedness of Professionals**

17.     I am informed that the Debtors have numerous creditors and other parties in interest with whom they maintain business relationships with. In connection with the Debtors' proposed retention of A&G in these Chapter 11 Cases, A&G has reviewed the list of parties in interest provided by the Debtors (the "Potential Parties in Interest"). Such parties are listed on Schedule 1 attached hereto. A&G undertook a comprehensive review of the Potential Parties in Interest to determine whether it has any conflicts or other relationship that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtors. There are no connections to disclose.

18.     Accordingly, and to the best of my knowledge, information and belief, A&G (i) does not hold or represent any interest adverse to the Debtors' estates, (ii) has no connection with the Debtors, their creditors or other parties in interest herein, and (iii) is a "disinterested person" within the meaning of Bankruptcy Code § 101(14) (as modified by Bankruptcy Code § 1107(b)).

19.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, A&G has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these Chapter 11 Cases, except as otherwise disclosed herein. A&G may, in the future, provide professional services to entities or persons that may be Potential Parties in Interest or otherwise significant creditors of the Debtors in these Chapter 11 Cases, provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

20.     Neither I nor any other professional of A&G who will work on this engagement, to the best of my knowledge after reasonable inquiry, is related or connected to the United States Bankruptcy Judge assigned to this Chapter 11 Case, the United States Trustee for the Northern District of Texas (the "U.S. Trustee"), or any persons employed by the U.S. Trustee.

21.     As part of its diverse practice, A&G appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in these Chapter 11 Cases. Also, A&G has performed in the past, and may perform in the future, real estate consulting and advisory services for various attorneys and law firms and has been represented by several attorneys and law firms, some of whom may be involved in this proceeding. In addition, A&G may have in the past, may currently, and may in the future work with or against other professionals involved in this case in matters unrelated to the Debtors and these Chapter 11 Cases.

22.     A&G is not a "creditor" with respect to any fees and expenses of the Debtors within the meaning of Bankruptcy Code § 101(10). Specifically, before the commencement of these cases, A&G did not issue any invoices to the Debtors for which payment was sought (and the only payments received from the Debtors was the retainer). Further, neither I nor any other member of the A&G team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtors.

23.     Consequently, to the best of my knowledge, A&G is "disinterested" as that term is defined in Bankruptcy Code § 101(14) as modified by Bankruptcy Code § 1107(b), in that:

    a.      neither A&G nor any professional at A&G working on this engagement is or was a creditor, equity security holder or insider of the Debtors;

    b.      neither A&G nor any professional at A&G working on this engagement is or was, within two (2) years before the commencement of the Chapter 11 Cases, a director, officer, or employee of the Debtors; and

    c.      A&G has no interest materially adverse to the interests of the estate or of any class of creditors, by reason of any direct or indirect relationship to,

connection with, or interest in the Debtors.

24.    Despite the efforts described above to identify and disclose connections with the Potential Parties in Interest in these Chapter 11 Cases, because the Debtors are a large enterprise with numerous creditors and other relationships, A&G is unable to state with certainty that every client representation or other connection of A&G has been disclosed. If A&G discovers additional information requiring disclosure, A&G will file supplemental disclosures with the Court as promptly as possible. A&G further understands that it has a duty to continue to check for conflicts and connections, and if any new facts or relationships subsequently are discovered during the pendency of this Chapter 11 Case, A&G will supplement this Declaration and file the same with the Court.

This Declaration is provided in accordance with Bankruptcy Code § 327(a) and Bankruptcy Rule 2014.

Dated: July 15, 2022                              Respectfully submitted,

                                                   _/s/ Emilio Amendola_____
                                                   Emilio Amendola
                                                   Co-President, A&G Realty Partners, LLC

## **Schedule 1**

**Parties in Interest**

# Parties in Interest
# In re: Corsicana Bedding, LLC, *et al.*

**Debtors:**
Corsicana Bedding, LLC
Thetford Leasing, LLC
Olive Branch Building, LLC
Eastern Sleep Products Company
Englander-Symbol Mattress of Mississippi, LLC
Hylton House Furniture, Inc.
Luuf, LLC
Symbol Mattress of Florida, Inc.
Symbol Mattress of Pennsylvania, Inc.
Symbol Mattress of Wisconsin, Inc.
Symbol Mattress Transportation, Inc.
Master Craft Sleep Products, Inc.

**Equity Holders**
Blue Torch Capital
KKR
Long Pointe Capital

**Directors/Officers:**
Bradley Dietz
Eric Rhea
Matthew Khan
Robert W. Black
Scott Vogel

**Non-Debtor Affiliates**
Corsicana Parent Co., LLC
Chesterfield Landco, L.L.C.
Eastern Sleep-Fort Wayne, LLC
Eastern Sleep-Poinciana, LLC
Symbol Mattress – Las Vegas LLC
Symbol Mattress of New England, Inc.
Symbol Mattress of Indiana, Inc.

**Court Personnel:**
Hon. Mark X. Mullin
Jennifer Calfee, Courtroom Deputy
Hon. Edward L. Morris
Jana McCrory, Courtroom Deputy
Robert P. Colwell, Clerk of Court

**Restructuring Professionals:**
CR3 Partners, LLC
Donlin Recano & Co., Inc.
Haynes and Boone, LLP
Houlihan Lokey

**Counsel to Proposed DIP Lenders:**
McGuireWoods
Munsch Hardt Kopf & Harr PC
Schulte Roth & Zabel LLP

**U.S. Trustee Personnel:**
William T. Neary, U.S. Trustee
Lisa L. Lambert, Assistant U.S. Trustee
Asher Bublick, Trial Attorney
Meredyth Kippes, Trial Attorney
Nancy S. Resnick, Trial Attorney
Erin Schmidt, Trial Attorney
Elizabeth Young, Trial Attorney

**Banks/Lenders/UCC Lien**
**Parties/Administrative Agents:**
Bank of America
Blue Torch Credit Opportunities Fund II, LP
Blue Torch Credit Opportunities KRS Fund LP
Blue Torch Credit Opportunities SBAF Fund LP
Blue Torch Credit Opportunities SC Master Fund LP
Blue Torch Credit SC Fund LLC
Blue Torch Finance, LLC
Blue Torch Holdings SBAF Fund LLC
Blue Torch KRS Fund LLC
Blue Torch Offshore Credit Opportunities
  Master Fund II LP
BMO Harris Bank (fka M&I BANK)
BTC Credit Opportunities KRS Master Fund LP
BTC Credit Opportunities SBAF Fund LP
BTC Credit Opportunities SC Master Fund LP
BTC Holdings Fund II LLC
BTC Holdings KRS Fund LLC
BTC Holdings SBAF Fund LLC

BTC Holdings SC Fund LLC
BTC Offshore Holdings Credit
  Opportunities Master Fund II, LP
BTC Offshore Holdings Fund II-B LLC
Citizens Bank
Community National Bank & Trust
Dell Financial Services L.L.C.
Fifth Third Bank
First Community Bank, Tennessee
Leaf Capital Funding, LLC
Paypal Cash Account
Primis Financial Corp. (fka. Southern National
  Bancorp of Virginia Inc. & Sonabank)
Swiss Capital BTC OL Private Debt Fund L.P.
Swiss Capital BTC OL Private Debt
  Offshore SP
Swiss Capital BTC OL Private Debt Offshore SP,
  a Segregated Portfolio of Swiss Capital
  Private Debt (Offshore) Funds SPC
Synovus (fka First Bank of Jasper)
Truist, FL (fka BB&T, Florida)
Wingspire Capital LLC

**Contract Counterparties**:
 Agro International
 C3 Corporation
 Cune Encantada
 FXI, Inc.
 JB Hunt Transport, Inc.
 Schneider Trucking
 UFP

**Governmental/Regulatory Agencies**:
Equal Employment Opportunity
Commission
Internal Revenue Service
Office of the Attorney General
Office of the United States Attorney
Office of the United States Trustee
Securities & Exchange Commission
State Attorney General for Arizona
State Attorney General for Connecticut
State Attorney General for Indiana
State Attorney General for Florida

State Attorney General for Mississippi
State Attorney General for North Carolina
State Attorney General for Nevada
State Attorney General for Tennessee
State Attorney General for Texas
State Attorney General for Virginia
State Attorney General for Washington
State Attorney General for Wisconsin
Texas Comptroller of Public Accounts
Texas Workforce Commission
U.S. Department of Labor
U.S. Department of The Treasury
US Department of Justice

**Insurance-PFA Parties**:
 Allianz Global Risk US Insurance Company
 Aon Risk Services Northeast Inc. - New York,
 Associated Industries Insurance Company Inc.
 Axis Insurance Co.
 Blue Cross Blue Shield
 Certain Underwriters at Lloyds
 Continental Insurance Company
 Fidelity
 Great American Insurance Company
 Higginbotham
 Obsidian Specialty Insurance Company
 Peoples Premium  Finance
 Phoenix Insurance Company
 Starstone Specialty Insurance Company
 Travelers Indemnity Corporation of America
 Travelers Property and Casualty Company of
 America
 CNA Insurance Company
 Travelers
 AFCO Credit Corp.

**Known Affiliates – JV**:
Englander Sleep Products, LLC

**Litigation Parties**:
Koni Hospitality, Inc.

**Ordinary Course Professionals**:
Crowe LLP
Jones Walker LLP

**Landlords (Current & Former)**
3 LLC, dba MTP Net Lease Pool
3 LLC dba MTP 1100 S 12th St LLC
3001 Highway 287 LLC (benefit Morgan
  Stanley)
475 Willard Associates LLC
Albany Road- Mockingbird III LLC
Bal Bay Realty Ltd.
Bright Star Investment Properties LLC
Carpenter Company
Deep River Acquisition, LLC
Eastgate LLC
Forest Home Investors LLC dba Phoenix
  Glendale Industrial Investors LLC
Hepatica Hill Holdings LLC
Highwoods Realty Limited Partnership
International Market Cntrs Inc. dba WMCB
  Phase 2 SPE
LaPorte Property LLC
Moran Real Estate Properties Ltd.
Net Lease-Pool 3 LLC dba
  MTP 2001 Bellwood Rd LLC
Net Lease-Pool 3 LLC dba
  MTP 8300 Industrial Dr. LLC
NL Ventures XI Bellwood, L.L.C.
NL Ventures XI Olive Branch, L.L.C.
NL Ventures XI Watertown, L.L.C.
Phoenix Multistate Holdings One LLC dba
  Bartow Industrial Investors LLC
Phoenix Multistate Holdings One LLC dba
  Phoenix Greensboro Industrial Investors
LLC
Phoenix Multistate Holdings One LLC dba
  Phoenix Shelbyville Industrial Investors
LLC
Phoenix Multistate Holdings One LLC dba
  Phoenix Winlock Industrial Investors LLC
Phoenix Symbol JV LLC dba
  Phoenix Richmond Indstrl
Pinchal & Company, LLC
Rising Star Aviation holdings LLC
RY Holdings Property 300 LLC
Shelbourne Newington LLC
Uhlmann RV
Wharton Reading Industrial LLC

**Significant Competitors:**
Sealy Simmons
Temper Pedic

**Top 20 Creditors (by Legal Entity):**

**(Corsicana Bedding LLC – Top 20)**
Agro International
All American Poly Corporation
Axle Logistics LLC
Crowe LLP
Culp Inc.
Fedex
Future Foam, Inc.
FXI, Inc.
Iskeceli Celik Yay Tel Yan Urunleri
JB Hunt Transport, Inc.
Les Tricots Maxime Inc.
Ohm Systems Inc.
Pioneer & Legend Canada Ltd
Sidley Austin LLP
TWE Nonwovens US, Inc.
UFP Southwest LLC
United States Customs & Border Protection
UT+C
Visual Productions Group Inc.
Yilmar Dis Ticaret Ltd Sti

**(Eastern Sleep Products Company– Top 20)**
A To Z Packaging Enterprises, Inc.
C3 Corporation
Coyote Logistics LLC
Culp Inc.
Federal Express Corp.
FXI, Inc.
Hill Electrical, Inc.
Hill Express, Inc.
ID.Me Inc.
Ohm Systems Inc.
Packaging Corporation Of America
Pioneer & Legend Canada Ltd
Southside Woodcraft

Standard Fiber LLC
Tforce Freight
Thetford Associates, Inc.
UFP
UT+C
Wright Of Thomasville
Yilmar Dis Ticaret Ltd Sti

**(Englander-Symbol Mattress of Mississippi, LLC - Top 20)**

All American Poly Corporation
Bekaertdeslee USA Inc.
Carolina Industrial Resources
Carpenter Company
Culp Inc.
Custom Nonwoven, Inc.
Diamond Road Resawing LLCc
Estes Express Lines
FXI, Inc.
Jones Fiber Products LLC
Lava Experts In Knitting
Leggett & Platt Incorporated
Pioneer & Legend Canada Ltd
Precision Fabrics Group Inc.
Schneider National Inc.
Texas Pocket Springs Tech
TWE Nonwovens US Inc.
UFP
UT+C
Yilmar Dis Ticaret Ltd Sti

**(Luuf, LLC- Top 20)**
UT+C

**(Symbol Mattress of Florida, Inc. - Top 20)**
Fastening Solutions, Inc.

**(Symbol Mattress of Pennsylvania, Inc. - Top 20)**
NONE

**(Symbol Mattress of Wisconsin, Inc. – Top 20)**

A To Z Packaging Enterprises, Inc.
American & EFIRD, Inc.
Carpenter Company
FXI, Inc.
Green Bay Packaging Inc.
Jones Fiber Products LLC
Lava Experts In Knitting
Leggett & Platt Incorporated
Pioneer & Legend Canada Ltd
Precision Textiles LLC
Schneider National Inc.
Standard Fiber, LLC
Steel City Bedframe, LLC
Summit Logistics
Talalay Global Inc.
Travero Logistics, LLC
TWE Nonwovens US Inc.
UFP
UT+C
Yilmar Dis Ticaret Ltd Sti

**(Thetford Leasing, LLC - Top 20)**
NONE

**(Olive Branch Building, LLC- Top 20)**
NONE

**(Hylton House Furniture, Inc. - Top 20)**
NONE

**(Symbol Mattress Transportation, Inc. - Top 20)**
NONE

**(Master Craft Sleep Products, Inc. - Top 20)**
NONE

**Vendors:**
1420 W Mockingbird LLC
1st Class Concrete
3001 Highway 287 LLC (Benefit Morgan
3cloud LLC
3gtms LLC
7laboratory Corporation Of America

A Lava & Son Co
A To Z Packaging Enterprises, Inc.
A To Z Packaging Enterprises, Inc.
A&A Design Studio LLC
AAA Logistics Solutions LLC Dba Sup
ABF Freight System Inc.
Acme Partnership LP A TX
   Limited PA
Active Sales Co Inc.
Adhesive Products Co.
Adhesive Products Inc. Dba Adhesive
Advance Fiber Tech. Corp.
Advance Fiber Technologies Corporation
Agile Education Marketing LLC
Agro International
Airgas Inc. Dba Airgas USA LLC
All American Poly Corporation
All Pro Plumbing Of Central FL LLC
Allied Electronics Inc.
Allied Waste Services Inc. / Republic
Alta Enterprises, LLC Dba Nitco
Alta Holding Co LLC Dba Alta Indust
American & Efird US Hldgs Inc.
American & Efird, Inc.
Amerigas Propane LP
Amerigas-Richmond VA
Ancelmo Medina
Applied Industrial Tech.
Applied Products, Inc.
Aramark Uniform & Career Apparel Gr
Arcbest
Aries Global Logistics, Inc.
Asheboro Elastics Corp Dba AEC Narr
Asheboro Elastics Corporation
Associated Printing Services, Inc.
AT&T
Atlanta Attachment Co Inc.
Atlanta Attachment Company
Attentive Mobile Inc.
Averitt Express
Averitt Express Inc.
Avex LLC
Axle Logistics LLC
B & B Ice Of Tampa Bay Inc.
Baker& Hostetler, LLP
Barajas And Son Transportation LLC

Beckway, LLC
Bedrock Logistics, LLC
Bekaertdeslee USA Inc.
Berry Global Films, LLC
BG Staffing Inc. Dba Instaff
Blue Ridge Tool Inc.
Blue Torch Capital LP Dba Blue Torch
Brady Industries Of Tennessee, LLC
Brightedge Technologies, Inc.
Bruce Essick Truck Sales & Service
Bruin Plastics Company Inc.
Bryce Byman Dba B&B Landscaping Serv.
Buss Electrical Contracting LLC
C3 Corporation
Capital Lighting & Supply LLC
Capital One N.A.
CardConnect, LLC
Carolina Industrial Resources
Carolina Industrial Systems Inc.
Carpenter Company
Cartridge World Richmond
Cavert Wire Company, Inc.
CDW LLC Dba CDW Direct LLC
Central Florida Forklift
Centurylink
Channeladvisor Corporation
Charles E Donley Dba Circuit Solutions
Chep USA
Chua & Sons Co, Inc. Dba Reliable Ta
Cicchiello & Cicchiello LLP
Cintas Corporation
Cintas Corporation Dba Cintas Corp
Cit Group/Commercial Ser/Precision
City Electric Supply (C.E.S. Montgo)
City Of Greensboro
Clearco Products Co. Inc.
Coats American, Inc.
Colonial LLC
Colonial, LLC
Comcast
Commerce Technologies, LLC
Complete Office Of Wisconsin
Compressed Air Power Inc.
Compressed Air Technology, Inc.
Concur Technologies, Inc.
Continental Casualty Co. Dba CNA

Insurance
Convenient Coffee Service
Copper State Bolt & Nut Company, Inc.
Corporation Service Company
Corsicana Mattress Indiana
Corsicana Mattress North Carolina
Corsicana Mattress Texas
Corsicana Welding Supply Corp.
Cover Contract Sewing LLC
Coyote Logistics LLC
Cranston Trucking Co Div. Of Cranston
Crowe LLP
Crown Equipment Corp.
CT Nassau Tape Corp
CT Nassau Tape LLC
Culp Inc.
Custom Nonwoven, Inc.
Cyxtera Communications, LLC
D & D Packaging, Inc.
Dara J Incles
Dearborn Life Insurance Company
Dell Financial Services LLC
Dell Marketing LP
Denali Heating And Air Conditioning
Dex Imaging
Diamond Needle Corp
Diamond Needle Corporation
Diamond Road Resawing LLC
Dm Trans, LLC Dba Arrive Logistics
Dream Tech
DS Waters Of American Inc. Hinckley
Dun & Bradstreet
E.R. Carpenter Co.
East TX Lift Trucks Inc. Dba Lift Trucks
Eastern Lift Truck Co., Inc.
EIS Inc.
EIS Intermediate Holdings LLC
Element Technology St. Paul Inc.
Elite Comfort Solutions LLC
Elliott Electric Supply
Empire Paper Company
Encore Holding LLC Dba Encore Fire
Engage Consulting LLC
Englander Sleep Products LLC
Eric Rhea Dba Cordova Development
ESCO Group Inc. Dba Edge Sweets Co

ESCO Group Inc.
Escreen Inc.
Estes Express Lines
Eva Chaney
Express Services Inc. Dba Express Em
Federal Express Corp.
Fedex
Fedex Freight
Ferrellgas LLC
Fiserv
Fibrix LLC
Five9 Inc.
Flexfoam Div Of Western Bonded Prod
Flex-Pac Inc. Dba Flexpac
FMR LLC Dba Fidelity Investments Inc.
Forest Home Investors LLC
Forklift Service Company LLC
Franklin Pest Solutions North Inc.
Fredman Brothers Furniture Company, Inc.
  d/b/a Glideaway Bed Carriage
  Manufacturing Inc.
Freightlead LLC
Future Coil LLC
Future Foam, Inc.
Fxi, Inc.
G&S Electrical Services LLC
Gautami Gandham Dba Neutronit Inc.
GC Pivotal LLC
Gee Cee's Inc.
Glideaway Bed Carriage Manufacturing Inc.
Glideaway Sleep Products Inc.
Global Data Vault LLC
Global Equipment Co Inc.
Global Textile Alliance
Global Textile Alliance, Inc.
Grainger, Inc.
Graphic Information Services Inc.
Green Bay Packaging Inc.
Greg Dexter Dba Duck River Lift Trucks
Greypoint Inc. Dba Convoy Gribetz Intl
GT Designs And Apparel LLC
Hanes Companies, Inc.
Hartline Alarm Company Inc.
Headset Advisor, Inc.
Henderson Sewing Machine Company
Hewlett Packard Financial Services

High Point Fibers, Inc.
Highwoods Realty Limited Partnership
Hill Electrical, Inc.
Hill Express, Inc.
Hilti Inc.
Holly G Strzelecki Dba Edge Transport
Hornwood Inc.
HP Inc. (Formerly Hewlett Packard Co
Hubspot, Inc.
Hunter Plumbing Company Inc.
Id.Me Inc.
IJS - EJS Inc.
Industrial Power Products, Inc.
Information Resources Inc.
Integrated Electric Supply Co.
Intermountain Staffing Inc.
Internal Revenue Services
International Market Cntrs Inc.
Int'l Market Centers Inc.
Iskeceli Celik Yay Tel Yan Urunleri
J & L Tire Inc.
J.B. Hunt Transport, Inc.
J.J. Keller & Associates Inc.
Jasztex Fibres Inc.
Jayhawk Plastics Inc.
JB Hunt ICS
JB Hunt Transport, Inc.
Jennifer Rose Dba Rose Services
JH Rose Logistics LLC
Joe Strickland Dba Red Fox Serv.
John Bouchard & Sons Comp
Jones Fiber Products Inc.
Jones Fiber Products LLC
Jose Acosta Dba T & M Go Blue Service
Joseph Bordieri Electric LLC
Just Posted LLC
JWR Inc.
Kanbons LLC
Kastle Systems Of Texas LLC
Kazlow & Fields, LLC.
Kevin Kingston Dba King Air Conditioning
KKGF LLC Dba UT+C
Knickerbocker Bed Company
Konica Minolta Business Solutions
Konica Minolta Premier Finance
Kroy LLC Dba Buckeye Business Products

Kuebix LLC
L E Whitford Co Inc.
L&P Financial Services Co
L.P. Brown Company Inc.
La Cuna Encantada, S.A. De C.V.
Lakeland Sanitary & Janitor Supply
Lava Experts In Knitting
Lava USA
Leggett & Platt Incorporated
Lemon Ventures Inc.
Les Tricots / Maxime Knitting Mills
Les Tricots Maxime Inc.
Lewis Systems & Service, Inc.
LHH Recruitment Solutions
Logicdata North America, Inc.
Lynton LLC
M J Pierce Distributor
Madigan Studios Inc.
Magnum Industrial Distributors Inc.
Marco A Herrera Mejia Dba Levingsto
Maria Sigmond Dba Sigmond Consulting
Mark Thomas Dba Vertex Machine Co
Mateers Storage Trailer Rentals, Inc.
Mattress Firm Inc.
Mckee Lumber & True Value, Inc.
Mcmaster-Carr Supply Co.
Mcmaster-Carr Supply Company
Metro Trailer Leasing Inc.
Metropolitan Life Insurance Company
MFI Intl Manu LLC Dba MFI International
Michael Andrades Dba Andrades Truck
Michael Best & Friedrich LLP
Microd LLC
Mirabelli Automotive LLC
Mobile Force LLC Dba Mobile Force
Mobile Mini Inc. Dba Mobile Storage
Moran Real Estate Properties Ltd
Motion Industries Inc.
Munck Wilson Mandala, LLP
Nashville Propane Exchange
National Lift, LLC
Nationwide Electric Supply
Nelson Propane Gas Inc.
New England Needles Inc.
Nomaco Inc.
Northern Chemical Company

Northern Safety Co Inc.
NTG Holdings LLC Dba Nolan Transportation
Nucycle Energy Of Tampa LLC
Nutex Concepts
Office Depot, Inc.
Ohm Systems Inc.
Old Dominion Freight Line Inc.
Onin Staffing LLC
Ontario Refrigeration Services Inc.
Open Text Inc.
Opentext Inc.
Orca Pacific Manufacturers Represen
Orkin Exterminating Co.
Owen Hardware, Inc.
P.J. Mirabelli Enterprises, Inc.
Pablo R. Gonzalez
Pacific Northern Environmental Corp
Packaging Corporation Of America
Patco, Inc.
Patrick Gray Dba 3DCG Consulting
Penske Truck Leasing Co.
Peoples Premium Finance
Pest-X Exterminating, Inc.
Phoenix Multi-State Holdings One LLC
Phoenix Symbol JV LLC Dba Phoenix R
Piedmont Natural Gas
Pioneer & Legend Canada Ltd
Pioneer & Legend Canada Ltd.
Pioneer Fire And Security Inc.
Pitney Bowes Global Financial Svc
Pitney Bowes Lease
Porter International - L & P Finance
Pratt Industries Statesville
Precision Blades Inc.
Precision Fabrics Group Inc.
Precision Textiles LLC
Preferred Furniture Components Inc.
Premier Integrity Solutions Inc.
Premier Trailer Leasing Inc.
Pre-Paid Legal Services, Inc.
Primera Technology, Inc.
Printelements Corp
Printer Logic Inc. Dba Vasion Priority-1 Inc.
Prisma Graphic Corporation
Professional Trailer Repair Inc.

Prohealth Medical Group
Prostar Services Inc. Dba Parks Coffee
Purchase Power
Purchase Power Pitney Bowes
Purecare
Purvis Industries
Quality In Propane LLC Dba Propane
Quality Parts Express Inc.
Quality Petroleum Corporation
Quench USA, Inc.
Quill Corporation
R & F Construction
R&S Salvage And Recycling LLC
R&SI Inc. Dba Total Employment & Man
Recycling Services Of Florida
Renfrow Heating, Air And Plumbing,
Responsive Surface Technology LLC
Richardson Bottling Company
Riveron Intermdt Holdings Inc.
Robert (Bob) W Black
Ro-Brand Products Inc.
Ropes & Gray LLP
Rosenthal & Rosenthal Inc.
Royal Imaging Services, LLC
Ryan Transportation Service, Inc.
Ryder Last Mile, Inc.
Saba North America LLC
Safety Products Inc.
Sales Corp Of America
Sarah Mineo
Schmidt Machine Co, Inc.
Schneider National Carriers Inc.
Schneider National Inc.
Schulte Roth & Zabel LLP
Scott David Vogel - Vogel Partners
SCS Sales, LLC
SCS Texas LLC
Sedona Holdings Inc. Dba Globaltranz
Shawn Products, Inc.
Shelbourne Newington, LLC
Sid Tool Co. Inc. MSC Industrial Supply
Sidley Austin LLP
Sigma Supply Of North America
Sourcing Unlimited Dba Jumpsource
Southeastern Freight Line
Southerland, Inc.

Southern Carlson Fastening Packaging
Southerncarlson, Inc.
Southside Woodcraft
Southwest Fire & Security LLC
Spec-Tex, Inc.
Spectrum Adhesives, Inc.
Standard Fiber LLC
Staples
Staples Contract & Commercial Inc.
Starlift Equipment Co, Inc.
Stearns Weaver Miller Weissler
Steel City Bedframe, LLC
Steinreich Communications Group, Inc.
Summit Logistics Services, LLC
Summit Plastics Inc.
Sunbelt Rentals, Inc.
Supplyone Dallas
Sutton Clark Supply, Inc.
Symbol Mattress Of Wisconsin
Systems Contractors LLC
Talalay Global Inc.
Talx UCM Services Inc. Dba Equifax W
Tarheel Paper & Supply Co.
Technical Sales LLC Dba Randolph E
TeleCheck
Texas Pocket Springs Tech
Texas Tollways CSC
Tforce Freight
The Coburn Company Inc. Dba Coburn P
The Coburn Company Inc.
The Grounds Guys Of Collierville
The Randall Powers Company Dba Powers
The Travelers Indemnity Company
Thetford Associates, Inc.
Third Coast PR LLC
Thomasville Dexel Inc. Dba TD Fiber
Tietex International, Ltd.
Tommie Copper Inc.
Total Quality Logistics LLC
Toyotalift Of Arizona, Inc.
Transloop Logistics, LLC
Travero Logistics, LLC
Triad Forklift, LLC
Trichromatic West Inc.
Trident Transport, LLC
Trinity Logistics Inc.

Truck Parts & Service, Inc.
Truly Nolen Of America Inc.
TTS LLC Dba Ha Logistics
TWE Nonwovens US Inc.
UFP Dallas, LLC
UFP Eastern Division, Inc.
UFP Southwest LLC / UFP Dallas
Uline Inc.
United Industrial Automation Inc.
United Parcel Service
United Rentals North America Inc.
Universal Sewing Supply Inc.
Ups Freight
US Customs And Border Protection
UT + C
Verizon
Viking Engineering & Development Inc.
VIP Search Group, LLC
Virginia State Corp Commission
Visual Productions Group Inc.
W. Silver, Inc.
W. W. Grainger Inc. Dba Grainger
Walmart Stores Inc.
Warm Products Inc. Dba The Warm
Company
Webb Mason Inc.
Werner Enterprises Inc.
White & Case LLP
Wm T Burnett Holding LLC
XPO Logistics Freight Inc. (Conway)
XPO Logistics Freight, Inc.
XTRA Companies Inc. Dba XTRA Lease
Yellow Diamond Consults LLC
Yilmar Dis Ticaret Limited Sirketi
Yilmar Dis Ticaret Ltd Sti
Zim Chemical Co., Inc.
Zonkd, Inc.   (Formerly Dolven Enterprises
Zoro Tools Inc. Dba Zoro

**Utilities:**
Allied Waste Services Inc. / Republic Services Inc.
AT & T Universal Biller
AT & T Online Payments
AT&T
AT&T U-Verse
Atmos Energy Gas

Bcn Telecom, Inc.
Centurylink
City Of Bartow
City Of Corsicana
City Of Glendale
City Of Greensboro
City Of Olive Branch
City Of Winlock
Cogent Communications, Inc.
Columbia Gas
Comcast Communications FL
Connecticut Natural Gas Corporation
Cox Business Dba Cox Communications Phoenix
Direct Energy Business
Dominion Energy Virginia
Duke Energy
Frontier Communications Corp Dba
  Citizens Communications Co
Granite Telecommunications LLC
Harold Lemay Enterprises Inc. Dba City Sanitary
Lewis County Public Utilities District
Momentum Telecom Inc. Direct
Northcentral EPA
Northland Communications
Nucycle Energy Of Tampa LLC
Piedmont Natural Gas
Puget Sound Energy
R&S Salvage And Recycling LLC
Recycle Services
Recycling Services Of Florida
Republic Services
Shelbyville Power System
SRP
T-Mobile USA Inc.
Treasurer, Chesterfield County
USA Hauling & Recycling, Inc.
Verizon Wireless
Waste Connections Of TN
Waste Management Corp Svcs, Inc.
Waste Management Of Arizona Inc. - Phoenix Hauling
Watertown, City Of
Wisconsin Electric Power

**Wages – Service Provider:**
PayCom

**Taxing Authorities:**
  Alabama Department Of Revenue
  Allen County, Indiana Treasurer
  Arizona Department Of Revenue
  Arkansas Dept Of Finance & Administration
  Bedford County Trustee
  California Dept Of Consumer Affairs
  Capitol Services Inc.
  Chesterfield County Treasurer
  Chesterfield County, VA
  City And County Of Denver Dept Of Finance
  City Of Apopka, Ohio
  City Of Colorado Springs
  City Of Detroit - Dept Of Health & Wellness
  City Of Jasper Revenue Dept
  City Of Monroeville
  City Of Olive Branch
  City Of Philadelphia, PA
  City Of Richmond, Virginia
  City Of Rochester, NY
  City Of Shelbyville - Property Tax
  City Of Steamboat Springs
  City Of Tuscaloosa
  City Of Watertown, WI
  Colorado Department Of Revenue
  Colorado State Treasurer
  Commonwealth Of Massachusetts
  Connecticut Commissioner Of Revenue Services
  Corporation Service Company
  County Of Henrico, VA
  Dallas County Tax Office
  Delaware Ehfs-Kc
  Desoto County Economic Development Counsel
  Desoto County, Mississippi
  Desoto County, Tax Collector
  Florida Department Of Revenue
  Florida Dept Of State
  Florida State Disbursement Unit
  Georgia Department Of Revenue
  Georgia Office Of Secretary Of State

Guilford County Tax Dept (Property)
Harbourpoint Invsmts Inc Dba Worldwide
 Registration
Henrico  County, GA
Idaho State Tax Commission
Illinois Department Of Revenue
Indiana Dept Of Revenue
Internal Revenue Service
Iowa Department Of Revenue
Kansas Dept Of Revenue
Kentucky State Treasurer / Dept Of Revenue
Lewis County, WA Treasurer
Louisiana Department Of Revenue
Lunenburg County Treasurer
Maryland Comptroller
Minnesota Department Of Revenue
Mississippi Department Of Revenue
Missouri Dept Of Revenue
Navarro County, TX
Nebraska Department Of Revenue
Nevada Legal Press
New Jersey Division Of Taxation
New Mexico Taxation And Revenue Department
New York Department Of State
New York State Corporation Tax
New York State Income Tax
Newington Revenue Collector
North Carolina Department Of Revenue
North Carolina Dept Of Revenue
North Carolina Secretary Of State
Ohio Dept Of Commerce
Ohio Dept Of Taxation
Oklahoma Tax Commission
Pennsylvania Department Of Revenue
Pennsylvania Department Of State
Pennsylvania Dept Of Labor & Industry, Bedding
 & Upholstery
Polk County, Florida
Rhode Island Division Of Taxation
Richardson ISD Tax Office
South Carolina Dept Of Revenue
South Dakota Department Of Revenue
State Comptroller Of Texas

State Of Alabama
State Of California
State Of Connecticut
State Of Iowa, Treasurer
State Of Maine Revenue Services
State Of Michigan
State Of Michigan Unemployment Ins Agency
State Of Nevada
State Of New Jersey
State Of Ohio, Treasurer
State Of Rhode Island
State Of Tennessee ,Div. Of Business Serv- Dept
 Of State
State Of Washington - Department Of Ecology
State Of Wisconsin -Dept. Of Revenue
Tennessee Dept Of Revenue
Texas Comptroller Of Public Accounts
Town Of Dayville, CT
Town Of Killingly, CT
Treasurer Chesterfield
Treasurer, Commonwealth Of Virginia
United States Treasury
Vermont Department Of Taxes
Virginia Department Of Taxation
Virginia State Corporation Commission
Walker County, Alabama
Washington Dept. Of Labor & Industry
Washington State Department
West Virginia State Tax Department
Wisconsin Dept Of Revenue
Wisconsin Dept Of Revenue, Sales And Use Tax