Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING EMPLOYMENT AND PAYMENT OF PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 8, 2022, AT 1:30 P.M. VIA WEBEX AT HTTPS://US-COURTS.WEBEX.COM/MEET/MORRIS IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AT 501 W. 10TH STREET, ROOM 147, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON AUGUST 5, 2022 WHICH IS AT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

**LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Corsicana Bedding, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Debtors") hereby file this *Debtors' Motion for an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

<u>**Jurisdiction and Venue**</u>

1.      The United States District Court for the Northern District of Texas (the "District Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**Background**</u>

2.      On June 25, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

3. On July 8, 2022, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases. No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Application and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Michael Juniper in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "Juniper Declaration").[2]

5. Prior to the Petition Date, the Debtors employed the professionals identified on the schedule attached to the Proposed Order (defined below) as **Exhibit 1** (the "Initial Ordinary Course Professionals"). The Initial Ordinary Course Professionals perform accounting and tax services that are not intrinsically related to the Chapter 11 Cases. The Debtors would require the services of the Initial Ordinary Course Professionals regardless of the pendency of the Chapter 11 Cases and the services do not significantly impact the direction of the Debtors' reorganization. To the best of the Debtors' knowledge, the Initial Ordinary Course Professionals have no interest materially adverse to the Debtors and their estates.

**Relief Requested**

6. By this Motion, the Debtors respectfully request, pursuant to Bankruptcy Code §§ 105(a), 327, 330, and 331, the entry of an order, substantially in the form attached to the Motion as **Exhibit A** (the "Proposed Order"), authorizing, but not directing, the Debtors (a) to retain the Ordinary Course Professionals without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional, and (b) to pay each Ordinary Course

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Juniper Declaration.

Professional for post-petition services rendered and expenses incurred, subject to certain limits set forth below, without the necessity of additional court approval.

7.     For the sake of clarity, individual retention applications will be required for any professionals that the Debtors seek to employ in connection with the conduct of the Chapter 11 Cases or in connection with special matters not appropriate for ordinary course treatment (the "Chapter 11 Professionals"). Moreover, the Chapter 11 Professionals will be permitted to be compensated and reimbursed only in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Court Rules of the United States Bankruptcy Court for the Northern District of Texas, and any orders entered in these Chapter 11 Cases governing professional compensation and reimbursement for services rendered and expenses incurred.

## A.     Proposed Ordinary Course Professional Procedures

8.     The Debtors propose the following procedures in recognition of the importance of providing information regarding Ordinary Course Professionals to the Court and the United States Trustee.

9.     The Debtors propose they be permitted to continue to employ and retain the Initial Ordinary Course Professionals. Within thirty (30) days of the later of (a) the entry of an order granting the relief requested herein or (b) the date on which each retained Initial Ordinary Course Professional commences services for the Debtors, each Initial Ordinary Course Professional will be required to provide to the Debtors and their counsel, for filing with the Court and service upon: (i) the Office of the United States Trustee for the Northern District of Texas (erin.schmidt2@usdoj.gov); (ii) counsel for the DIP Term Administrative Agent, Adam C. Harris and Abbey Walsh of Schulte Roth & Zabel LLC, adam.harris@srz.com and

abbey.walsh@srz.com; (iii) counsel for the DIP Revolver Administrative Agent, Brian Swett and Shawn Fox of McGuireWoods LLP, bswett@mcguirewoods.com and sfox@mcguirewoods.com; and (iv) counsel for the Committee, Michael Warner, Benjamin Wallen, Robert Feinstein, and Bradford Sandler of Pachulski Stang Ziehl & Jones LLP, mwarner@pszjlaw.com, bwallen@pszjlaw.com, rfeinstein@pszjlaw.com, bsandler@pszjlaw.com (collectively, the "Notice Parties"), a declaration pursuant to Section 1746 of title 28 of the United States Code, substantially in the form annexed to the Proposed Order as **Exhibit 2**, certifying that the professional does not represent or hold any interest adverse to the Debtors or the estates with respect to the matter on which the professional is to be employed (the "Declaration").

10.     The Debtors further request that upon the later of (i) the entry of the Proposed Order or (ii) service of each required Declaration, the Notice Parties will have fifteen (15) days (the "Objection Deadline") to object to the retention of the Initial Ordinary Course Professional in question. Any such objections must be filed with the Court and served upon the Debtors, the Debtors' counsel, the Notice Parties, and the subject Initial Ordinary Course Professional by the Objection Deadline. If any such objection cannot be resolved or withdrawn within fifteen (15) days after service, the matter will be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the Initial Ordinary Course Professional, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, if any objection is withdrawn, or if any objection submitted is timely resolved, the Debtors will be authorized to retain the Initial Ordinary Course Professional as a final matter without further order of the Court, as of the Petition Date or the applicable date of engagement.

11.     The Debtors also request that they be authorized to employ and retain additional Ordinary Course Professionals not currently listed on **Exhibit 1** as future circumstances require

(the "Additional Ordinary Course Professionals", and collectively with the Initial Ordinary Course Professionals, the "Ordinary Course Professionals"), without the need to file individual retention applications or provide further hearing or notice to any party, by filing with the Court a supplement to **Exhibit 1** (the "Supplement") and serving a copy of the Supplement upon the Notice Parties.

12.     The Debtors propose that, as with the Initial Ordinary Course Professionals, each Additional Ordinary Course Professional be required to provide to the Debtors and their counsel, for filing with the Court and service upon the Notice Parties, a Declaration within thirty (30) days after the filing of the Supplement. The Notice Parties will have twenty (20) days after service of each required Declaration to object to the retention of the Additional Ordinary Course Professional in question. Any objection would be handled as set forth herein. If no objection is timely submitted, the objection is withdrawn, or the objection submitted is timely resolved, the Debtors would be authorized to retain the Additional Ordinary Course Professional as a final matter without further order, *nunc pro tunc* to the date of filing the Supplement or the applicable date of engagement.

13.     The Debtors will not pay any fees and expenses to any Ordinary Course Professional (nor shall any such Ordinary Course Professional draw down on any existing retainer) unless: (a) such Ordinary Course Professional has submitted its Declaration and such Declaration is filed with the Court and served on the Notice Parties; (b) the applicable Objection Deadline has expired; and (c) no timely objection is pending. If a timely objection is received, no payment will be made until such objection is resolved, withdrawn, or otherwise overruled by the Court.

**B.      Proposed Payment Procedures**

14.     The Debtors seek authority to pay, without formal application to and order from the Court, the fees and expenses of each Ordinary Course Professional upon submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of

the post-petition services rendered and expenses incurred. The Debtors, however, recognize that bills exceeding certain dollar amounts should be subject to the approval procedures otherwise applicable to Chapter 11 Professionals.

15. Once the Debtors retain an Ordinary Course Professional in accordance with these procedures, they propose to pay such Ordinary Course Professional one-hundred percent (100%) of their fees and one-hundred percent (100%) of their disbursements incurred with respect to postpetition services, upon the submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date; provided, however, that each Ordinary Course Professional's total compensation and reimbursement shall not exceed the applicable monthly fee cap set forth in **Exhibit 1** of the proposed order or in any Supplement on average over any three month period on a rolling basis (the "Monthly Fee Cap").

16. The Debtors propose that payments to a particular Ordinary Course Professional would become subject to Court approval based upon an application for allowance of fees and expenses under Bankruptcy Code §§ 330 and 331, under the same procedures that are established for Chapter 11 Professionals, only if such payments exceed the Monthly Fee Cap; *provided, however,* that the applicable Ordinary Course Professional shall be entitled to interim payment of its requested fees and expenses up to the Monthly Fee Cap pending the Court's allowance of those requested fees and expenses in excess of the Monthly Fee Cap.

17. In the ordinary course of business, as a routine matter, the Debtors review all bills received from the Ordinary Course Professionals to assess the reasonableness of the fees charged and the necessity of the expenses incurred. This type of review will continue post-petition and,

coupled with the proposed Monthly Fee Cap, will protect the Debtors' estates against excessive and improper billings.

## C.    Periodic Payment Statements

18.    Within thirty (30) days after the end of, and with respect to, each full three-month period after the Petition Date (including any initial partial month in the first period), the Debtors propose to file a periodic payment summary statement with the Court and to serve such statement upon the Notice Parties. The summary statement will include the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the statement period; and (c) a general description of the services rendered by such Ordinary Course Professional. The obligation to file summary statements will terminate upon confirmation of a plan in the Chapter 11 Cases.

### Basis for Relief Requested

19.    The Debtors seek the relief requested in this Motion to avoid any later controversy about employing and paying the Ordinary Course Professionals during the pendency of the Chapter 11 Cases. The Debtors believe that their decision to employ the Ordinary Course Professionals is appropriate under Bankruptcy Code § 363(c)(1) because the employment and compensation of the Ordinary Course Professionals are matters that relate to the ordinary course of the Debtors' business. By this Motion, the Debtors are neither requesting to pay prepetition amounts owed to any of the Ordinary Course Professionals nor requiring the Ordinary Course Professionals to waive any claim against the Debtors.

### A. The Debtors Employ the Ordinary Course Professionals in the Ordinary Course of the Debtors' Business

20.     Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors, as debtors in possession, are authorized to operate their business. Bankruptcy Code § 363(c)(1) further defines the scope of a debtor's authority and provides that, unless the court orders otherwise, a debtor in possession may enter into transactions, including the use, sale, or lease of estate property in the ordinary course of business without notice and a hearing. "The framework of section 363 is designed to allow a trustee (or a debtor in possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary." *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) (quoting *In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Neither the Bankruptcy Code nor its legislative history provide a framework for analyzing whether particular transactions are in the ordinary course of a debtor's business. *See id.*

21.     In order to determine whether or not a transaction falls in the ordinary course of business, many courts have adopted two tests: the "vertical dimension" or "creditor's expectation" test, and the "horizontal dimension" or "industry-wide" test. *See id. See also Burlington N. R.R. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700 (9th Cir. 1988).

22.     Under the vertical dimension test, courts "analyze[] the transactions from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risk of a different nature from those he accepted when he decided to extend credit." *In re Nellson Nutraceutical, Inc.*, 369 B.R. at 797. A debtor's pre-petition business practices and conduct are the primary focus of the vertical analysis. *Id.* Under the horizontal

dimension test, courts analyze "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *Id.*

23.     Application of the vertical and horizontal tests to the Debtors' employment and compensation of the Ordinary Course Professionals demonstrates that the Debtors' actions should be considered ordinary course transactions pursuant to Bankruptcy Code § 363(c)(1). With regard to the vertical dimension test, the Debtors' employment and compensation of the Ordinary Course Professionals is consistent with the Debtors' pre-petition business practices. The Debtors utilized the services of each of the Initial Ordinary Course Professionals in connection with the day to day operation of the Debtors' business. Further, the Debtors' creditors may reasonably assume that the operation of the Debtors' business requires the assistance of various non-bankruptcy professionals in connection with legal, consulting, accounting, and tax services.

24.     With regard to the horizontal dimension test, it is standard practice for manufacturing companies to utilize the services provided by the Ordinary Course Professionals in connection with day to day operations. Therefore, employment and compensation of the Ordinary Course Professionals satisfies both the horizontal and vertical tests, and is therefore consistent with Bankruptcy Code § 363(c)(1).

**B. The Ordinary Course Professionals are not Professional Persons Under Bankruptcy Code § 327**

25.     The Ordinary Course Professionals should not be subject to the requirements of Bankruptcy Code § 327 because they are not "professional persons" within the meaning of Bankruptcy Code § 327(a). Under Bankruptcy Code § 327(a), a debtor "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, *or other professional*

*persons* to represent or assist the [debtor] *in carrying out the [debtor's] duties under this title."* 11 U.S.C. § 327(a) (emphasis added).

26.     Not all individuals normally considered as professionals are deemed professionals for purposes of Bankruptcy Code § 327. *In re Smith*, 524 B.R. 689, 694-95 (Bankr. S.D. Tex. 2015). Bankruptcy Code § 327(a) requires the professional "to represent or assist the trustee in carrying out the trustee's duties under this title." Therefore, courts have required that the professional person's employment must specifically relate to the administration of the bankruptcy case, as opposed to the ordinary course operation of the debtor's business. *Id.* (citing *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

27.     Furthermore, the professional person's employment must be "central" to the administration of the estate, and Bankruptcy Code § 327(a) should only apply if the professional will play an intimate role in the reorganization of the debtor's estate. *See id. See also, e.g.*, *In re Aladdin Petroleum Co.*, 85 B.R. 738, 740-41 (Bankr. W.D. Tex. 1988) (stating that in determining professional status, the Court should consider, among other factors, the effect of the services upon the administration of the bankruptcy case and how central that role is to the reorganization proceedings); *Elstead v. Nolden (In re That's Entm't Mktg. Group)*, 168 B.R. 226, 230 (N.D. Cal. 1994) (only retention of professionals whose duties are central to administration of estate requires prior court approval under section 327).

28.     If the debtor is not seeking to employ a professional because of a need that arose incident to the bankruptcy, Bankruptcy Code § 327 should not apply, regardless of whether the professional's services are important to the debtor's business. *See In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 894 (Bankr. E.D. Wis. 1987) (explaining that section 327 should not apply where the professional's services are "necessary whether a Chapter 11 has been filed or not, and

the nature of the services does not change significantly on account of the bankruptcy"). *See also In re Seiling Assoc. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (environmental toxicology consultant could be hired in the ordinary course of Debtor's business without court approval); *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) (lobbyist retained to perform services in the ordinary course of debtor's business "performed a function completely external to the reorganization process" and therefore did not fall under § 327 "professional."); *In re Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr. S.D.N.Y. 1981) (holding that maritime engineers employed in the course of Debtor's business would "play an important role in the mechanics of [Debtor's] operation," but were not professionals under § 327 because their retention would not "affect the administration of [Debtor's] reorganization.").

29.     Although the Ordinary Course Professionals provide valuable services for the Debtors, their employment is not central to the reorganization of the Debtors' business. Furthermore, it could hinder the administration of the Debtors' estates if the Debtors were required (a) to submit to the Court an application, declaration, and proposed retention order for each Ordinary Course Professional, (b) to wait until such order is approved before such Ordinary Course Professional continues to render services, and (c) to withhold payment of the normal fees and expenses of the Ordinary Course Professionals until they comply with the compensation and reimbursement procedures applicable to Chapter 11 Professionals.

30.     Under such conditions, there is a risk that some Ordinary Course Professionals would be unwilling to provide services, and that others would suspend services pending a specific court order authorizing the services. Since many of the matters for which the Ordinary Course Professionals provide services are active on a day-to-day basis, any delay or need to replace professionals could have adverse consequences on the Debtors' estates. For example, if the

expertise and background knowledge of the Ordinary Course Professionals with respect to the particular matters for which they were responsible prior to the Petition Date were lost, the estates undoubtedly would incur additional and unnecessary expenses because the Debtors would have to retain other professionals without such background and expertise, at potentially higher rates. It is therefore in the best interest of the Debtors' estates to avoid any disruption to the professional services required.

31.    Moreover, the requested relief will allow the Debtors to avoid additional fees that such Ordinary Course Professionals would charge in connection with preparing and prosecuting numerous interim fee applications. Likewise, the procedure set forth above will relieve the Court, the United States Trustee, and other interested parties of the burden of reviewing a multitude of fee applications involving relatively small amounts of fees and expenses.

32.    To the best of the Debtors' knowledge, none of the Ordinary Course Professionals represents or holds any interest materially adverse to the Debtors or to their estates with respect to the matter in which the Debtors employ such Ordinary Course Professional(s). Although certain of the Ordinary Course Professionals may hold unsecured claims against one or more of the Debtors, the Debtors do not believe that any of such claims constitute interests materially adverse to the Debtors, their estates, their creditors, or other parties in interest.

33.    Courts in this and other districts in Texas have granted similar relief. *See, e.g.*, *In re Vista Proppants and Logistics, LLC,* Case No. 20-42002 (ELM) (Bankr. N.D. Tex. Aug 6, 2020) [Docket No. 367]; *In re Erickson Incorporated,* Case No. 16-34393 (HDH) (Bankr. N.D. Tex. Dec. 16, 2016) [Docket No. 190]; *In re CHC Group Ltd.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. 2016); *In re Mirant Corp.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. Aug. 1, 2003); *In re A'GACI, L.L.C.,* Case No. 18-50049-rbk-11 (RBK) (Bankr. W.D. Tex. March 13, 2018); *In re*

*Preferred Care Inc.,* Case No. 17-44642 (MXM) (Bankr. N.D. Tex. Jan. 23, 2018); *In re Buffets, LLC,* Case No. 16-50557 (RBK) (Bankr. W.D. Tex. 2016); *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex. Mar. 9, 2009); *In re Am. Plumbing, Inc.*, Case No. 03-55789 (LMC) (Bankr. W.D. Tex. Nov. 12, 2003); *In re Encompass Svs. Corp.*, Case No. 02-43582 (WRG) (Bankr. S.D. Tex. Dec. 18, 2002).

### C. Nunc Pro Tunc Relief is Appropriate

34. The Debtors request that the employment of the Ordinary Course Professionals be approved retroactively to the Petition Date, or in the case of Additional Ordinary Course Professionals, retroactively to the date of the filing of the Supplement or the applicable date of the engagement. The Debtors filed this Motion as a precautionary measure to avoid any later controversy about employing and paying the Ordinary Course Professionals during the pendency of the Chapter 11 Cases. Therefore, granting the relief requested in this Motion retroactive to the Petition Date will not prejudice any party in interest. Furthermore, even if the Ordinary Course Professionals were subject to the requirements of Bankruptcy Code § 327, the Court would have the authority to approve *nunc pro tunc* relief. *Cluck v. Osherow (In re Cluck)*, 62 F.3d 395 (5th Cir. 1995) (affirming bankruptcy court's *nunc pro tunc* approval of services that benefitted the estate). Additionally, Local Bankruptcy Rule 2014-1(b)(1) provides that, "[i]f a motion for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous." N.D. Tex. L.B.R. 2014-1(b)(1).

35. Based on the foregoing facts and circumstances, the Debtors submit that the employment and compensation of the Ordinary Course Professionals in the manner set forth above

and in the proposed Order is supported by sound business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

### **Request for Waiver of Stay**

36.     To the extent that the relief sought in the Motion constitutes a use of property under Bankruptcy Code § 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of the estates.

### **Notice**

37.     Notice of this Application will be provided to the parties listed on the Debtors' service list in accordance with the *Order Granting Complex Chapter 11 Bankruptcy Case Treatment*.

WHEREFORE the Debtors respectfully requests that the Court (i) grant the Motion and (ii) grant such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 15th day of July, 2022.

**HAYNES AND BOONE, LLP**

By: */s/ Stephen M. Pezanosky*
Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**ORDER AUTHORIZING EMPLOYMENT AND PAYMENT OF
PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

4867-5608-0935

Upon the *Debtors' Motion for an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* (the "Motion")[2] of Corsicana Bedding, LLC, *et al.* (collectively, the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, Miscellaneous Rule No. 33 (N.D. Tex. August 3, 1984); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections, if any, to the Motion have been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      The Debtors are authorized, but not directed, to employ and retain the Ordinary Course Professionals listed on the attached **Exhibit 1** (the "Initial Ordinary Course Professionals"), without the need to file individual retention applications and obtain retention orders for each such Ordinary Course Professional. Such authorization is effective as of the Petition Date or the applicable date of engagement.

3.      Within seven (7) days after the date of entry of this Order, the Debtors shall serve

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this Order upon each Initial Ordinary Course Professional. Thereafter, no later than thirty (30) days after the date of entry of this Order, each Initial Ordinary Course Professional shall provide to the Debtors and the Debtors' counsel, for filing with the Court and service upon (i) the Office of the United States Trustee for the Northern District of Texas (erin.schmidt2@usdoj.gov); (ii) counsel for the DIP Term Administrative Agent, Adam C. Harris and Abbey Walsh of Schulte Roth & Zabel LLC, adam.harris@srz.com and abbey.walsh@srz.com; (iii) counsel for the DIP Revolver Administrative Agent, Brian Swett and Shawn Fox of McGuireWoods LLP, bswett@mcguirewoods.com and sfox@mcguirewoods.com; and (iv) counsel for the Committee, Michael Warner, Benjamin Wallen, Robert Feinstein, and Bradford Sandler of Pachulski Stang Ziehl & Jones LLP, mwarner@pszjlaw.com, bwallen@pszjlaw.com, rfeinstein@pszjlaw.com, bsandler@pszjlaw.com (collectively, the "Notice Parties"), a declaration pursuant to Section 1746 of title 28 of the United States Code, substantially in the form attached hereto as **Exhibit 2** (the "Declaration").

4. The Debtors are authorized, without need for further hearing or order from the Court, to employ and retain Ordinary Course Professionals not currently listed on **Exhibit 1** hereto (the "Additional Ordinary Course Professionals", and collectively with the Initial Ordinary Course Professionals, the "Ordinary Course Professionals") by filing with the Court, and serving on the Notice Parties, a supplement to **Exhibit 1** (the "Supplement"), listing the name of the Additional Ordinary Course Professional, together with a brief description of the services to be rendered, serving a copy of the Supplement on the Notice Parties, and by otherwise complying with the terms of this Order. Such authorization is effective *nunc pro tunc* to the date of filing the Supplement or the applicable date of engagement. Each Additional Ordinary Course Professional shall file a Declaration within thirty (30) days of the filing of such Supplement.

5.     The Notice Parties shall have fifteen (15) days after the later of (i) the entry of this Order or (ii) the service of any Declaration (the "Objection Deadline") to object to the retention of any Ordinary Course Professional. Any such objections shall be filed with the Court and served upon the Debtors, the Debtors' counsel, the Notice Parties, and the Ordinary Course Professional subject to such objection by the Objection Deadline. If any objection cannot be resolved or withdrawn within ten (10) days after service (or on such earlier date as determined by the Debtors in their discretion), upon motion by the Debtors, such objection shall be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the Ordinary Course Professional, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, or if any submitted objection is timely withdrawn or resolved, the Debtors shall be authorized to retain the Ordinary Course Professional as a final matter without further order of the Court, as of the Petition Date or the applicable date of engagement.

6.     The Debtors shall not pay any fees or expenses (nor shall any Ordinary Course Professional draw down any previously provided retainer) to any Ordinary Course Professional unless (a) the Ordinary Course Professional has submitted its Declaration and such Declaration has been filed with the Court and served on the Notice Parties; (b) the Objection Deadline has expired; and (c) no timely objection is pending. If a timely objection is received, no payment shall be made until such objection is either resolved or withdrawn or otherwise overruled by the Court.

7.     In the event that the Debtors utilize the services of an Ordinary Course Professional after the Petition Date, the Debtors shall pay such Ordinary Course Professional 100% of the fees and 100% of the disbursements incurred with respect to postpetition services, upon the submission to, and subject to approval by, the Debtors of an appropriate invoice setting forth in reasonable

detail the nature of the services rendered and expenses actually incurred; provided, however, that each Ordinary Course Professional's total compensation and reimbursement shall not exceed the Monthly Fee Cap set forth in **Exhibit 1** or in any Supplement, as applicable, on average over any three month period on a rolling basis.

8.    If an Ordinary Course Professional's fees and expenses exceed the Monthly Fee Cap over a three-month rolling basis, such Ordinary Course Professional shall file a fee application on account of the excess amount over the applicable limit and apply for compensation and reimbursement of such amount in compliance with Bankruptcy Code §§ 330 and 331 and applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other procedures and orders of the Court. Such applicable Ordinary Course Professional shall be entitled to interim payment of its requested fees and expenses up to the Monthly Fee Cap pending the Court's allowance of those requested fees and expenses in excess of the Monthly Fee Cap.

9.    Within thirty (30) days after the end of, and with respect to, each full three month period after entry of this Order (including any initial partial month in the first period), the Debtors shall file with this Court, and serve upon the Notice Parties, a summary statement that includes the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; and (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the statement period. The obligation to file summary statements shall terminate upon confirmation of a plan in the Chapter 11 Cases.

10.    This Order shall not apply to any professional retained by the Debtors under a separate order of this Court.

11.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062 or

9014, the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

12.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     Notwithstanding anything in this Order to the contrary, (a) payments authorized by, and any authorizations contained in, this Order are subject to the terms, conditions, limitations, and requirements of any cash collateral or DIP financing orders entered in these Chapter 11 Cases (together with any approved budgets in connection therewith, the "DIP Financing Orders") and (b) to the extent there is any inconsistency between the terms of such DIP Financing Orders and any action taken or proposed to be taken hereunder, the terms of such DIP Financing Orders shall control.

#  #  #   END OF ORDER   #  #  #

**Submitted by:**

Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTORS**

**<u>Exhibit 1</u>**

**Initial Ordinary Course Professionals**

| Professional (Name & Address) | Type of Service Provided | Monthly Fee Cap if Services are Utilized |
|---|---|---|
| Crowe LLP<br>Amin Hussain<br>750 N. St. Paul St., Suite 850<br>Dallas, TX 75201<br>Email: amin.hussain@crowe.com,<br>Scott.spencer@crowe.com | Accounting / Tax | $20,000 |

## **Exhibit 2**

**Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**DECLARATION OF [DECLARANT], ON BEHALF OF PROPOSED ORDINARY
COURSE PROFESSIONAL [COMPANY NAME]**

I, [**Declarant**], pursuant to Section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my information, knowledge, and belief:

1.     I am [**Title**] of [**Company Name**], located at [**Address**] (the "Company").

2.     Corsicana Bedding, LLC and/or its affiliated debtors (collectively, the "Debtors") have requested that the Company provide [**Type of Services**] to the Debtors, and the Company has consented to provide such services.

3.     The Company may have performed services in the past and may perform services in the future, in matters unrelated to these Chapter 11 Cases, for persons that are parties in interest in these cases. As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these cases. The Company does not perform services for any such person in connection with these cases. In addition, the Company

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch"); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, Inc. (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

4867-5608-0935

does not have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.

4.     Neither I, nor any principal of, or professional employed by the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Company.

5.     Neither I, nor any principal of, or professional employed by the Company, insofar as I have been able to discover, holds or represents any interest adverse to the Debtors or their estates.

6.     The Company believes that the Debtors owe it [**$Amount**] for prepetition services.

7.     At any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

8.     I, or a representative of the Company, have read and am familiar with the requirements of the *Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business*.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this [**Date**] in [**City, State**].

_____
[**Declarant**]