Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, TX 77002
Tel: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
bwallen@pszjlaw.com

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler 9admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Tel: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>CORSICANA BEDDING, LLC, *et al.*,<br><br>          Debtors. | Chapter 11<br><br>Case No. 22-90016-ELM-11<br><br>Jointly Administered |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO
ENGLANDER SLEEP PRODUCTS, L.L.C.'S OBJECTION TO MOTION SEEKING
ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME THE ESP
OPERATING AGREEMENT AND LICENSING AGREEMENT AND (II) HOLDING
THE PURCHASE OPTION UNENFORCEABLE**

The Official Committee of Unsecured Creditors (the "Committee") of Corsicana Bedding,

LLC, *et al.* (the "Debtors") responds to *Englander Sleep Products, L.L.C.'s Objection to Motion*

*Seeking Entry of an Order (I) Authorizing the Debtors to Assume the ESP Operating Agreement*

*and Licensing Agreement and (II) Holding the Purchase Option Unenforceable* [Docket No. 306]

(the "Assumption Objection") and respectfully states:

1.        On August 1, 2022, the Debtors filed the *Motion Seeking Entry of an Order (I)*

*Authorizing the Debtors to Assume the ESP Operating Agreement and Licensing Agreement and*

*(II) Holding the Purchase Option Unenforceable* [Docket No. 239] (the "Assumption Motion").

The Committee supports the Assumption Motion and respectfully urges the Court to grant it.

2. On August 12, 2022, Englander Sleep Products, L.L.C. ("ESP") filed its Assumption Objection to the Assumption Motion, asserting three principal arguments: (a) that Debtor Olive Branch Building, LLC cannot assume ESP's Operating Agreement to which Olive Branch is a party because the Operating Agreement is not an executory contract subject to Bankruptcy Code § 365; (b) that Olive Branch cannot assume either the Operating Agreement or the License Agreement between ESP and Olive Branch in light of the provisions of Bankruptcy Code § 365(c); and (c) that ESP's purchase option contained in its Operating Agreement, allegedly triggered by Olive Branch's bankruptcy filing, is somehow not an unenforceable *ipso facto* clause. The first argument ignores a practical reality that makes whether the Operating Agreement is executory a purely academic point. The second argument ignores binding Fifth Circuit law on the applicability of § 365(c). The third argument—which ESP has already asserted in a stay relief motion to which the Committee and the Debtors have objected—is based entirely on a single bankruptcy court opinion that does not address critical facts present here, has never been cited or even mentioned in any reported decision anywhere in the country, and does not bind this Court.

3. Through the Assumption Motion, the Debtors propose to sell their equity interest in Olive Branch to the Stalking Horse. While ESP may not like that result, there is no basis under the law or the Operating Agreement to object to the changing of ownership interests of one of their LLC members. Before the Court is a simple assumption by a debtor of its LLC operating agreement and license agreement. Unquestionably, under the broad deference granted to a debtor under the business judgment rule, Olive Branch is entitled to do that. The Assumption Objection lacks merit. The Court should overrule it.

**Operating Agreement is Executory, But It Does Not Matter**

4.      The Assumption Objection spends considerable space examining whether the Operating Agreement is an executory contract subject to the provisions of Bankruptcy Code § 365. The Committee agrees with ESP that the issue of whether a particular LLC operating agreement is executory can be difficult. But the Committee agrees even more with the Debtors when they substantiate an argument in the Assumption Motion [at p. 9] that the Operating Agreement falls within a general rule that LLC operating agreements are typically considered executory contracts, especially when an operating agreement imposes ongoing obligations on all LLC members. The Assumption Motion persuasively establishes that the Operating Agreement here clearly falls within the Countryman definition of an executory contract by citing the many provisions in the Operating Agreement that impose ongoing and as-yet-unperformed obligations on Olive Brach, ESP, and all other ESP members. The Committee adopts the Debtors' arguments and substantiation in the Assumption Motion and respectfully urges the Court to consider them in light of ESP's almost complete failure to counter that substantiation. ESP's half-hearted argument— that the Operating Agreement is not executory because there are certain matters on which members do not vote—simply cannot overcome the far more holistic view of an executory Operating Agreement the Debtors portray in the Assumption Motion. The Committee agrees with the Debtors that the Operating Agreement is executory for the reasons stated in the Assumption Motion and respectfully asks the Court to so rule.

5.      But, practically speaking, it does not matter. Were Olive Branch intent on assuming and *assigning* the Operating Agreement to another party (such as the Stalking Horse expected to purchase substantially all the Debtors' assets), the question of whether Olive Branch could accomplish that under Bankruptcy Code § 365 would matter greatly. That is not what is happening.

3

The *Asset Purchase Agreement* filed with the Court on July 26, 2022, at Doc. 185 (the "<u>Amended APA</u>") makes it clear that the Stalking Horse is not directly purchasing Olive Branch's membership interest in ESP, and the Assumption Motion makes it clear that Olive Branch does not intend to assign the Operating Agreement to anyone. Instead, Olive Branch is simply going to assume the Operating Agreement, meaning that it will continue to enjoy its rights and bear its obligations as an ESP member following the closing of the sale.

6.      Because the identity of the member under the Operating Agreement is not changing and because no one, including Olive Branch, seeks to alter its rights and obligations under the Operating Agreement, whether the Operating Agreement can be assumed as an executory contract is really just an academic point. Even if the Operating Agreement were not executory, Olive Branch would still be bound by the obligations and still be entitled to the rights arising under the Operating Agreement after the sale because Olive Branch will still be a member of ESP after the sale exactly as it was before the sale.

7.      Note, also, that ESP has not alleged a breach of the Operating Agreement or a resulting termination of Olive Branch's membership interest. Thus, there is nothing to cure under Bankruptcy Code § 365(b) as a condition to Olive Branch's assumption if the Operating Agreement is executory and no non-bankruptcy basis on which to terminate Olive Branch's membership interest as a result of any breach. For this reason, too, it simply does not matter whether Olive Branch assumes the Operating Agreement because it is executory, or does not because it is not. Olive Branch remains a member of ESP under the Operating Agreement either way. The issue is an academic one that the Court need not resolve.

4

**ESP Objects to Relief the Debtors Do Not Seek**

8. A critical distinction exists between the relief sought in the Assumption Motion and the relief ESP appears to be objecting to. The Assumption Motion seeks an order permitting Olive Branch to assume, under Bankruptcy Code § 365(a), both the Operating Agreement and the License Agreement between ESP and Olive Branch. The Assumption Motion does *not* seek an order permitting Olive Branch to assign either agreement to anyone. Yet that seems to be exactly what ESP objects to.

9. ESP mentions the assignment of the Operating Agreement or the License Agreement some 19 times in its Assumption Objection despite that nowhere in the Assumption Motion do the Debtors evince any desire or intention to assign either agreement. The Assumption Motion simply does not seek that relief. This is not merely an example of the clichéd ships passing in the night—it is fatal to the Assumption Objection insofar as so much of it is based on ESP's would-be rights to prohibit an assignment of either agreement under Bankruptcy Code § 365(c).

10. Paragraph after paragraph of ESP's objection reiterates ESP's rights under Bankruptcy Code § 365(c) to restrict or prohibit the *assignment* of the Operating Agreement and the License Agreement. The Operating Agreement cannot be assigned, says ESP, because Delaware law is the "applicable law" under § 365(c)(1)(A) that would permit ESP from refusing to accept performance from someone other than Olive Branch. The License Agreement cannot be assigned, says, ESP, because, again, "applicable law" excuses ESP from accepting performance under the License Agreement from someone other than Olive Branch, the original licensee.

11. But Olive Branch is not seeking to assign either the Operating Agreement or the License Agreement. Olive Branch seeks only to *assume* those agreements under § 365(a). ESP's thorough and singular reliance on § 365(c) is misplaced, though understandable. The initial phrase

5

of § 365(c) provides that the trustee "may not assume or assign any executory contract or unexpired lease" if one of the three enumerated exceptions apply, including that "(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession … and (B) such party does not consent to such assumption or assignment …" Courts throughout the country have long disagreed about whether § 365(c) prohibits a debtor from simply assuming a contract that falls within § 365(c)(1) when the debtor-in-possession has no intention of *assigning* the contract. Some courts read the opening phrase (and the use of the word "or") literally, finding no ambiguity and, therefore, enforcing the literal language despite that the entire provision makes little sense if the debtor seeks only to assume but not assign the contract. Other courts find that Congress could not have meant to prevent debtors-in-possession from simply assuming such contracts and deeming § 365(c), viewed holistically with the rest of the section, especially subsection (e), ambiguous enough to treat the initial phrase as though it reads "and" rather than "or," adopting an "actual" test that focuses on whether the debtor-in-possession is *actually* trying to assign the contract or simply to assume it.[1]

12.     Fortunately, this Court need not wrestle with so vexing an issue. The Fifth Circuit Court of Appeals has already resolved this issue in a case ESP does not cite. In *Mirant*, the Fifth Circuit adopted an "actual test" in considering § 365(c) and (e), requiring "a case-by-case … showing that the nondebtor party's contract will *actually* be assigned or that the nondebtor party

---

[1] For example, *cf. RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.),* 361 F.3d 257 (4th Cir. 2004) (if a contract cannot be assigned, it cannot be assumed), and *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999) (same), with *Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489 (1st Cir. 1997), *cert. denied,* 521 U.S. 1120 (1997) (§ 365(c) and (e) require a case-by-case inquiry into whether the non-debtor party was actually being forced to accept performance under its executory contract from someone other than the debtor party with whom it originally contracted), and *Bonneville Power Administration v. Mirant Corp. (In re Mirant Corp.),* 440 F.3d 238 (5th Cir. 2006) (adopts "actual test" and looks to debtor-in-possession's actual intent with respect to executory contract, not a "hypothetical" assignment of the contract to another party).

will *in fact* be asked to accept performance from or render performance to a party … other than the party with whom it originally contracted."[2] Even interpreting the Assumption Objection as saying that § 365(c) prohibits Olive Branch from assuming the Operating Agreement or the License Agreement (despite that it keeps referring to assignment), *Mirant* invalidates ESP's entire argument that the Operating Agreement and the License Agreement cannot be assumed under Bankruptcy Code § 365(c). The "actual test" this Court follows under *Mirant*'s precedent can only result in a ruling that Olive Branch may assume both agreements because Olive Branch is not actually assigning either agreement to anyone else.

### The Purchase Option Is an Unenforceable Ipso Facto Clause

13.     *Mirant* also defeats ESP's argument that its so-called Purchase Option is anything other than an unenforceable *ipso facto* clause under Bankruptcy Code § 365(e), which holds as unenforceable any provision of an executory contract that would terminate or modify any right of the debtor under the contract "because of a provision in such contract … conditioned on … (B) the commencement of a case under this title …" The Operating Agreement is an executory contract subject to the provisions of § 365(e). The Bankruptcy Triggering Event and the resulting Purchase Option, were it exercised, would modify and terminate all of Olive Branch's rights and obligations under the Operating Agreement and, by extension, the License Agreement. For this reason, courts hold that purchase options such as ESP's, when they appear in an LLC's operating agreement and are triggered by a debtor's bankruptcy filing, are unenforceable *ipso facto* clauses.[3]

---

[2] *In re Mirant Corp.*, 440 F.3d at 249 (emphasis added).

[3] *See, e.g., Allentown Ambassadors, Inc. v. Northeast Am. Baseball, LLC (In re Allentown Ambassadors, Inc.)*, 361 B.R. 422, 445 *et seq.* (Bankr. E.D. Pa. 2007) (finding operating agreement to be executory contract and a buyout option to be an unenforceable *ipso facto* clause under § 365(e)(1)(B)); *Northrop Grumman Tech. Servs. v. Shaw Group Inc. (In re IT Group, Inc.)*, 302 B.R. 483, 487 (D. Del. 2003) (affirming bankruptcy court's ruling that buy-out right arising under an LLC's operating agreement triggered by the debtor's bankruptcy filing, was an unenforceable *ipso facto* clause).

14. ESP also asserts (as it did in its motion for stay relief) that Olive Branch's pledging of its membership interest as security to Blue Torch is a "Triggering Event" entitling ESP to exercise its Purchase Option. But, as the Committee and the Debtors have already pointed out in their objections to ESP's stay relief motion, ESP's own Operating Agreement does not say that. Section 8.2.4 of the Operating Agreement does provide that a grant of lien in a membership interest "shall be deemed null and void." That section does *not* say that it is a "Triggering Event" for anything. In fact, Section 8.2.2 is the only section of the Operating Agreement setting forth what constitutes a "Triggering Event." Whatever Section 8.2.4 may say about its validity, attempting to pledge membership interests as security for a loan is *not* a "Triggering Event" under the Operating Agreement. ESP persists in arguing that the Operating Agreement says something it does not, even after the Debtors and the Committee have already demonstrated in filings last week that the so-called "Financing Triggering Event" does not exist and that ESP's arguments belie the plain language of the Operating Agreement.

15. The Committee's further arguments regarding why Section 8.2.2 of the Operating Agreement—the so-called "Bankruptcy Triggering Event"—is an unenforceable *ipso facto* clause under Bankruptcy Code § 365(e)(1) as well as Bankruptcy Code § 541(c)(1)(B) are set forth in the Committee's previously-filed opposition to ESP's stay relief motion at Docket No. 301. The Debtors have made similar and complementary arguments further establishing that the Bankruptcy Triggering Event is an unenforceable *ipso facto* clause in the Assumption Motion, and the Committee joins in and adopts those arguments here.

**Conclusion**

16.     The Operating Agreement is executory, although the Committee believes the issue
to be academic. There is no statutory impediment to Olive Branch's assumption of the Operating
Agreement or the License Agreement because Olive Branch does not seek to assign either
agreement, making Bankruptcy Code § 365(c) inapplicable. The Bankruptcy Triggering Event
constitutes an unenforceable *ipso facto* clause under Bankruptcy Code §§ 365(e)(1) and 541(c)(1).

WHEREFORE, the Committee urges the Court to overrule the Assumption Objection and
grant the Assumption Motion.

Dated: August 15, 2022                          Respectfully submitted,

                                                */s/ Michael D. Warner*
                                                Michael D. Warner (TX Bar No. 00792304
                                                Benjamin L. Wallen (TX Bar No. 24102623)
                                                PACHULSKI STANG ZIEHL & JONES LLP
                                                440 Louisiana Street, Suite 900
                                                Houston, TX 77002
                                                Tel: (713) 691-9385
                                                Facsimile: (713) 691-9407
                                                mwarner@pszjlaw.com
                                                bwallen@pszjlaw.com

                                                -and-

                                                Robert J. Feinstein (admitted *pro hac vice*)
                                                Bradford J. Sandler (admitted *pro hac vice*)
                                                PACHULSKI STANG ZIEHL & JONES LLP
                                                780 Third Avenue, 34th Floor
                                                New York, NY 10017-2024
                                                Tel: (212) 561-7700
                                                Facsimile: (212) 561-7777
                                                rfeinstein@pszjlaw.com
                                                bsandler@pszjlaw.com

                                                *Proposed Counsel to the Official Committee of*
                                                *Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this 15th day of August, 2022, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Michael D. Warner*
Michael D. Warner

DOCS_NY:46288.3 15806/002